**בבית המשפט המחוזי בארצות הברית עבור מחוז קולומביה**

| | |
|---|---|
| | **פאדי אלסלאמין** |
| | שדרות אריזונה 2856 צפון-מערב |
| | וושינגטון הבירה 20016 |
| | |
| | הצד התובע, |
| | |
| תיק מס' 1976-cv-16 | נגד |
| | |
| **הוגשה דרישה למשפט עם חבר מושבעים** | **בנק פלסטין בע"מ** |
| | בניין בנק פלסטין |
| | רחוב נזלת אל-מחכמה |
| | עין מצבאח |
| | רמאללה, השטחים הפלסטינים |
| | |
| | הצד נתבע |

<u>**תלונה**</u>

תביעה זו דורשת פיצויים על פעולות בלתי חוקיות שבוצעו על ידי הנאשם בנק פלסטין, אשר פעל באופן מתמשך ומתוזמר לפגוע באמינות התובע פאדי אלסלאמין ולסחוט אותו, עקב שיוכו הפוליטי והצהרות שהשמיע בפומבי נגד המשטר הפלסטיני הנוכחי. כחלק מהמזימה, בנק פלסטין הכפיש את מר אלסלאמין, קשר קשר עם פקידים בממשלה הפלסטינית כדי להכפישו, חדר לפרטיותיו, העליל עליו עלילות, ופגע במכוון בחוזים ובהזדמנויות עסקיות. פעולותיו של בנק פלסטין פגעו באופן ישיר ומכוון בגומיניתו של מר אלסלאמין ובמעמדו בקהילה העסקית וטירפדו הזדמנויות עסקיות רבות ערך. פעולותיו של בנק פלסטין הובילו לאיומים על חייו של מר אלסלאמין ומנעו ממנו לחזור לפלסטין. על מנת לתמוך בטענותיו נגד בנק פלסטין, מר. אלסלאמין מציג את הדברים הבאים:

**סמכות שיפוט ומקום המשפט**

1.  בית משפט זה מחזיק בסמכות השיפוט על תביעה זו בהתאם ל-1332 § U.S.C. 28 מכיוון שמר  אלסלאמין הוא תושב ארצות הברית ומחוז קולומביה, בנק פלסטין הוא תושב השטחים הפלסטינים, בנק פלסטין אינו שוכן במחוז קולומביה, והסכום במחלוקת, להוציא ריבית ועלויות, חורג מ-75,000 דולר.

2.  מקום המשפט מתאים למחוז השיפוטי בהתאם ל-(2)-(b)1391 § U.S.C. 28 מכיוון שחלק מהותי מהאירועים התומכים בטענותיו של מר אלסלאמין התרחשו במחוז קולומביה. כמו כן, מקום המשפט מתאים למחוז השיפוטי בהתאם ל- 28 U.S.C. § 1391(b)(3) מכיוון שבנק פלסטין כפוף לשיפוט האישי של בית המשפט ביחס לפעולה זו.

## הצדדים

3.  מר אלסלאמין הוא אזרח ותושב ארצות הברית ומחוז קולומביה. מר אלסלאמין הוא גם אזרח ישראלי וממוצא ערבי. בכל התאריכים הרלוונטיים, מר אלסלאמין התגורר במחוז קולומביה והנזק שנגרם למוניטין ולאינטרסים העסקיים שלו היה כאן.

4.  מר אלסלאמין נולד בבאר שבע שבישראל וגדל בחברון בגדה המערבית. הוא למד בארצות הברית, וקיבל תואר שני ביחסים בינלאומיים וכלכלה מבית הספר למחקרים בינלאומיים מתקדמים באוניברסיטת ג'ון הופקינס.

5.  מר אלסלאמין תומך במוסדות הממשל הלגיטימיים של פלסטין, על אף הביקורת שהוא משמיע לעיתים קרובות נגד השחיתות וחוסר השקיפות בקרב אישים מסוימים בגופים ממשלתיים פלסטיניים והממשל הנוכחי. מר אלסלאמין נוהג לבקר בחריפות את נשיא הרשות הפלסטינית הנוכחי, מחמוד עבאס.

6.  בנק פלסטין הוא אחד מהבנקים הלאומיים הגדולים ביותר הפועלים בפלסטין. מדובר בחברה ציבורית הנסחרת בבורסה תחת חוקי הרשות הפלסטינית. בסיס העסקים שלו נמצא ברמאללה. בנק פלסטין מחזיק בחשבון קורספונדנט אחד לפחות בארצות הברית בסיטיגרופ בע"מ, ומחזיר סוכן רשום בניו יורק למען קבלת כתבי בית דין משר האוצר או התובע הכללי של ארצות הברית בהתאם ל-31 U.S.C. § 5318(k).

7.  לבנק פלסטין יש קשרים משמעותיים עם מחוז קולומביה. למשל, בנק פלסטין מקבל ערבות המכסות סיכון פרעון על עסקאות הקשורות למסחר, מה שמאפשר לו להנפיק מכתבי אשראי על עסקאות יצוא-יבוא דרך תוכנית המימון הגלובלית לסחר של התאגיד הבינלאומי למימון. התאגיד הבינלאומי למימון הוא זרוע של הבנק העולמי, היושב בדרך פנסילבניה 2121 צפון-מערב, וושינגטון הבירה 20433.

8.  בנק פלסטין מקבל התחייבויות מקוריות בשווי של מאות מיליוני דולרים מהתאגיד הבינלאומי למימון המבוסס במחוז קולומביה.

9.  המשך שיתוף הפעולה של בנק פלסטין עם התאגיד הבינלאומי למימון הוביל להשקעת הון עצמי של עד 10 אחוז, מפעל הלוואות לסטודנטים הנתמך על ידי קרן החינוך הפלסטינית, ויוזמת למימון דיור המספקת דיור בר השגה.

10.  היוזמה לדיור בר השגה של בנק פלסטין היא תוכנית בשווי 500 מיליון דולר המעניקה הלוואות למשקי בית פלסטיניים בעלי הכנסה נמוכה ובינונית. מתוך אותם 500 מיליון דולר, בנק פלסטין מקבל 325 מיליון דולר מתאגיד ההשקעות הפרטיות במדינות זרות (OPIC), מוסד פיננסי לפיתוח של ממשלת ארה"ב היושב בשדרות ניו יורק 1100, צפון-מערב, וושינגטון הבירה, 20527. התאגיד הבינלאומי למימון סיפק ערבויות בשווי 75 מיליון דולר ליוזמת לדיור בר השגה.

11.  בנק פלסטין הוא חבר במכון הפיננסי הבינלאומי (IIF), צוות חשיבה הפועל לקידום מדיניות רגולטורית, פיננסית וכלכלית למען האינטרסים של החברים בו. המכון הפיננסי הבינלאומי יושב ברחוב H 1333, צפון-מערב, סוויטה 800E, וושינגטון הבירה, 20005.

## גורמים רלוונטיים שאינם צדדים בתביעה

12.  הרשות המוניטרית הפלסטינית היא הרשות הבנקאית הזרה המנפיקה רישיונות ומסדירה את הפעילויות הבנקאיות של בנק פלסטין.

13.  שירות הביטחון הפלסטיני הוא ארגון המורכב ממספר חטיבות, הכוללות את הביטחון המסכל ואת המוח'אבראת, אשר אחראים להלכה על פעילויות המודיעין הפנימי ועל מעקב אחר קבוצות אופוזיציה בתוך השטחים הפלסטינים (להלן: "<u>המודיעין הפלסטיני</u>").

14.  חברת המסחר וההשקעות הבינלאומית אל-סרנה ("<u>אל-סרנה</u>") היא חברה פלסטינית בערבון מוגבל, שנרשמה תחת מספר רישום 562527804 ב-26 לספטמבר 2013.

15. מועאויה אל-קוואסמה ("אל-קוואסמה") הוא המנהל האזורי של בנק פלסטין בדרום הגדה המערבית.

16. אל-אח'באר הוא אתר חדשות מקוון. לפי מידע ולפי החשד, אל-אח'באר הוא אמצעי תקשורת ידוע התומך בארגון הטרור חיזבאללה. חיזבאללה מחזיק וממנן את אל-אח'באר.

17. האשם שאווה הוא יושב הראש של בנק פלסטין.

18. מוחמד מוסטפה הוא יושב ראש קרן ההשקעות הפלסטינית ולשעבר סגן ראש הממשלה לעניינים כלכליים של הרשות הפלסטינית.

19. שוקרי בשארה הוא שר האוצר הפלסטיני המכהן.

**טענות עובדתיות**

*מר אלסלאמין נוהג לבקר בחריפות את הרשות הפלסטינית*

20. מאז 2011 בערך, מר אלסלאמין החל לבקר בחריפות את הרשות הפלסטינית ואת נשיאה מחמוד עבאס. מר אלסלאמין מתח ביקורת, בין היתר, על השחיתות של עבאס, אשר המשיך להחזיק בתפקידו מעבר למגבלת הכהונה שלו, ולא ערך בחירות כלליות.

21. למשל, מר אלסלאמין פרסם מאמרים המבקרים את הרשות הפלסטינית באל-ג'זירה, הפינגטון פוסט, וסוכנות החדשות "מען". דברי הביקורת שלו הופיעו במגוון גופי תקשורת אחרים, לרבות טיימס אוף ישראל, האקונומיסט, ו-"הארץ". הוא השמיע את הביקורת שלו בראיונות לרשת CNN ו-CCTV America. ולחשבונות של מר אלסלאמין במדיה החברתית, באמצעותם הוא מעביר ביקורת באופן קבוע על הרשות הפלסטינית והנשיא עבאס, יש מעל ל-600,000 עוקבים בפלסטין ומחוצה לה.

22. דברי הביקורת החריפים והמתמידים של מר אלסלאמין נגד הרשות הפלסטינית והנשיא עבאס זיכו אותו במוניטין ובכבוד ברחבי פלסטין והמזרח התיכון.

23. במסגרת זו, מר אלסלאמין הפך ליריב ידוע של הנשיא עבאס, ודמות מרכזית באופוזיציה לרשות הפלסטינית הנשלטת על ידי עבאס.

*לבנק פלסטין יש קשרים הדוקים ומושחתים עם הרשות הפלסטינית והמודיעין הפלסטיני*

24. לבנק פלסטין יש קשרים הדוקים עם הרשות הפלסטינית והמודיעין הפלסטיני. בנק פלסטין הוא המלווה הגדול ביותר של הרשות הפלסטינית. בנו של הנשיא הפלסטיני עבאס הוא חבר טוב של שוקרי בשארה, שר האוצר. ועזאם שאווה, נשיא הרשות המוניטרית הפלסטינית, הוא בן דודו של מוחמד מוסטפה, יושב ראש קרן ההשקעות הפלסטינית.

25. בנק פלסטין וסוכנויות של הממשלה הפלסטינית מנהלים עסקים משותפים בדרך קבע. פקידים בכירים בממשלה הפלסטינית ופקידים בבנק פלסטין רושמים מזימה לתיאום מחירי מניות. פקיד של בנק פלסטין קיבל שוחד לא חוקי עבור חוזים של בנק פלסטין. והרשות הפלסטינית שילמה משכורות לעובדים באמצעות הלוואות מבנק פלסטין.

26. כמו כן, כמפורט להלן, בנק פלסטין והמודיעין הפלסטיני קשרו קשר כדי להכשיע את מר אלסלאמין, להעליל עליו עלילות, לחדור לפרטיותיו, ולפגוע במכולו בחוזים ומערכות יחסים עסקיים – המודיעין הפלסטיני מתוך רצון להשתיק או לפגוע באמינותו של אחד ממבקריו, ובנק פלסטין לאור סירובו של מר אלסלאמין לקחת חלק בשחיתות של פקידי בנק פלסטין לטובתם האישית.

*אלסלאמין מקים את אל-סרנה כדי לתווך רכישה של נכס בירושלים ופותח חשבון בבנק פלסטין*

27. בספטמבר 2013, מר אלסלאמין ודודתו, מרים סלאמין, הקימו את אל-סרנה. מקום העסקים הרשום של אל-סרנה הוא בעיר חברון שבגדה המערבית. על אף שאל-סרנה ממוקם בחברון, רוב העסקים מתנהלים דרך מר אלסלאמין ממחוז קולומביה.

28. המטרה של אל-סרנה הייתה לפעול כסוכן עבור גוף באיחוד האמירויות הערביות, חברת הייעוץ והמחקר אל-תוראיה ("אל-תוראיה") על מנת להשפיע על רכישת והשבחת חלקת מקרקעין בירושלים המזוהה במרשם 1015, עמוד 3035, של רשומות העיר העתיקה ירושלים ("הכנס בירושלים").

29. על פי שאל-תוראיה הסכימה לכסות את ההוצאות של אל-סרנה ומר אלסלאמין במימוש העברת הכנס, אל-תוראיה לא שילמה לאל-סרנה או למר אלסלאמין כל פיצוי כספי אחר. במקום זאת, אל-סרנה ומר אלסלאמין פעלו בתור סוכנים בהעברת הכנס, והיו אמורים להרוויח מוניטין משמעותי בקהילה העסקית של איחוד האמירויות הערביות, וצפו כי המוניטין יעזור להם לבנות מערכות יחסים עסקיות רווחיות נוספות.

30. לאחר הקמת אל-סרנה, החברה פתחה חשבון בבנק פלסטין ומינתה את החשבון על ידי העברת 2 מיליון דולר מאל-תוראיה.

31. מר אלסלאמין ניהל שיחות רבות עם פקידים של בנק פלסטין בנוגע למטרת החשבון והסיבות להפקדת הכספים בו.

32. בהמשך לרכישת הכנס, ב-5 לנובמבר 2014, מר אלסלאמין נכנס להסכם ראשוני למכירת נדל"ן עם לאמיה גואדה, יורשת הקניין של הכנס בירושלים, ובנה ועורך דינה בפועל, עבאד ג'ואד גואדה.

33. מחיר הרכישה של הכנס היה 2.5 מיליון דולר, שיעובר בתשלומים. התשלום הראשון של 1,520,000 דולר היה אמור להתבצע במועד החתימה על ההסכם.

34. מר אלסלאמין גרם לאל-סרנה לשלם את התשלום הראשון, כאשר מיליון דולר מתוכו הועברו מהחשבון של אל-סרנה באמצעות בנק פלסטין.

35. התשלום השני של 980,000 דולר היה אמור להתבצע ברגע שגברת גואדה תצליח להשיג קניין נקי מהיורשים האחרים והוכחה ממרשם המקרקעין בישראל לכך שהקניין לנכס הנו סחיר.

<u>הקנוניה של בנק פלסטין והמודיעין הפלסטיני</u>

36. כאמור להלן, בתחילת 2015 לערך, בנק פלסטין והמודיעין הפלסטיני נכנסו להסכם לשקדם את האינטרסים המשותפים והבלתי חוקיים שלהם. מכיוון שידעו שהחברה של מר אלסלאמין מחזיקה כעת בחשבון בבנק פלסטין, החליט שבנק פלסטין יגרום למר אלסלאמין לשלם שוחד לטובתם האישית ולפיך להכתים את שמו הטוב כאדם מכובד המשמיע ביקורת חריפה נגד השחיתות והפעילויות הבלתי חוקית של הממשלה הפלסטינית הנוכחית. כשמר אלסלאמין דחה את פניית בנק פלסטין לקחת חלק בשחיתות, בנק פלסטין והמודיעין הפלסטיני שינו גישה, וקשרו קשר להכפיש את שמו ולחדור לפרטיותו כנקמה באמצעות כלי התקשורת אל-אח'באר, אשר מופעל וממומן על ידי חיזבאללה. הנזק שנגרם למר אלסלאמין מחדירות ופעולות בלתי חוקיות אלו היה מהותי, ומסתכם במאות מיליוני דולרים.

<u>בנק פלסטין דורש שוחד תמורת גישה לחשבון</u>

37. הקשורים פעלו לראשונה בסביבות אפריל 2015, כשמר אלסלאמין המתין לקניין סחיר של הכנס בירושלים. על מנת להגן על הכנס בזמן ההמתנה לקניין, מר אלסלאמין העסיק מאבטחים במתחם הכנס. על מנת לשלם למאבטחים, מר אלסלאמין שלח בקשה לבנק פלסטין ממחוז קולומביה ב-16 לאפריל 2015, וביקש מבנק פלסטין למסור 9,000 דולר לאחיו של מר אלסלאמין.

38. כשאחיו של מר אלסלאמין הגיע לסניף בחברון של בנק פלסטין לאסוף את ה-9,000 דולר, המנהל האזורי של בנק פלסטין בדרום הגדה המערבית, אל-קוואסמה, הודיע לו שהחשבון הוקפא.

39. אחיו של מר אלסלאמין דרש תיעוד או אישור על כך שהחשבון הוקפא מהדין, אך אל-קוואסמה סירב לעשות זאת. בעת פגישה בביתו של אל-קוואסמה, הוא הודיע לאחיו של מר אלסלאמין שמר אלסלאמין "בצרות" עם הרשויות הפלסטיניות ורמז באופן שקרי שבנק פלסטין היה נתון ללחץ פוליטי מהרשות הפלסטינית להקפיא את החשבון.

40. במאי 2015, במאמץ להבין ולבטל את ההקפאה הבלתי חוקית של החשבון של אל-סרנה בבנק פלסטין, טס מר אלסלאמין לכוויית מוושינגטון הבירה על מנת לפגוש את אל-קוואסמה באופן אישי. בפגישה, אל-קוואסמה חזר וטען בפני מר אלסלאמין שהחשבון של אל-סרנה הוקפא אך עם זאת הבטיח לו שהוא יוכל לקבל גישה לכספים. אל-קוואסמה אמר למר אלסלאמין שאל-קוואסמה יפתח חשבון חברה חדש, מר אלסלאמין יצטרף להעביר את הכספים מהחשבון של אל-סרנה לחשבון החדש, ואל-קוואסמה יתן למר אלסלאמין את הכסף במזומן או בהמחאה.

41. מכיוון שאפשרות זו נראתה חשודה ולא מקובלת, מר אלסלאמין המשיך, מר אלסלאמין המשיך, לתקשר עם אל-קוואסמה באופן ישיר ודרך חבר משותף, נאביל אל-ג'בארי. אל-קוואסמה המשיך ופירט את המטרה המושחתת, והודיע למר אל-ג'בארי באופן מפורש שבנק פלסטין ישחרר את החשבון של אל-סרנה, אך רק בתמורה לשוחד של 500,000 דולר.

<u>בנק פלסטין ממשיך למנוע גישה לכספים של אל-סרנה באופן בלתי חוקי</u>

42. ב-14 לדצמבר 2015, רישומי הכנס של הנכס בירושלים עודכנו במרשם המקרקעין הישראלי, והראו שקניין הנכס נקי ומופקד בידי אדם בודד.

43. ב-24 לינואר 2016, מר אלסלאמין רשם ייפוי כוח בלתי חוזר במרשם המקרקעין הישראלי. מסמך זה מספק התראה על עסקת מכירה ושהקניין יוענק למר אלסלאמין מרגע השלמת עסקת המכירה, כלומר ברגע שמר אלסלאמין יגרום לאל-סרנה לשלם את התשלום האחרון בשווי 980,000 דולר.

44. בעקבות המלצה של מכרים באיחוד האמירויות הערביות, מר אלסלאמין ניסה לעבוד עם בכירה אחרת בבנק פלסטין, אומנה פייסל אבו-שאחלה, קצינת התפוצות בעזה.

45. בהתאם לכך, ב-15 למרץ 2015, מר אלסלאמין ביקשה מגברת אבו-שאחלה להעביר סכום של 980,000 דולר לחשבון עבור המוכר. בנק פלסטין, עם זאת, סירב לממש את העברת הכספים, והתעקש שהחשבון הוקפא, לא בגלל הקנוניה הבלתי חוקית נגד מר אלסלאמין, אלא בגלל שבנק פלסטין דרש הוכחה למותה של דודתו של מר אלסלאמין ולסמכות הנוכחית על החשבון. כמתואר להלן, עם זאת, הייתה זו תחבולה שנועדה לגרום למר אלסלאמין לחשוף מסמכים אישיים ומקיפים בפני בנק פלסטין.

<u>בנק פלסטין משתף פעולה עם המודיעין הפלסטיני כדי לאסוף מידע סודי אודות מר אלסלאמין</u>

46. ב-18 למרץ 2016, מר אלסלאמין כתב לראש יחידת התפוצות של בנק פלסטין, סאלים הודאלי. מר אלסלאמין הודיע להודאלי על כך שגילה שפקיד של בנק פלסטין הודיע למודיעין הפלסטיני על החשבון של אל-סרנה ושפקידים במודיעין הפלסטיני חקרו את בנו של הבעלים של הנכס בירושלים. מר אלסלאמין הזכיר להודאלי כי "אין לי מה להסתיר. כל מה שאני עושה אני עושה מעל לשולחן. אני אולי מבקר את עבאס אבל איני לוקח חלק בכל פעילות בלתי חוקית נגדו או נגד כל אדם אחר. הרקורד שלי נקי ואין זה בלתי חוקי להעביר ביקורת על כל אדם שהוא."

47. בנק פלסטין, אשר פעל בפועל כזרוע של המודיעין הפלסטיני, הטעה את מר אלסלאמין בנוגע לסטטוס של החשבון על מנת לגרום למר אלסלאמין לשלוח לבנק פלסטין מסמכים מרובים המכילים מידע המאפשר זיהוי אישי. באופן פרטני, ב-20

למרץ 2016, יחידת התפוצות של בנק פלסטין הודיעו למר אלסלאמין שהבעיה היחידה עם העברת הכספים של אל-סרנה הייתה הצורך לקבוע מי מורשה החתימה של החשבון בעקבות מות דודתו של מר אלסלאמין ב-7 למאי 2015. בנק פלסטין ביקש באופן מפורש ממר אלסלאמין לספק לו מידע המאפשר זיהוי אישי על מנת לפתור את "הבעיה".

48. בפועל, "הבעיה" הייתה תחבולה, שיוצרה באופן מלאכותי על ידי בנק פלסטין כדי להשיג מידע המאפשר זיהוי אישי של מר אלסלאמין. ואכן, במאמציו לסחוט את מר אלסלאמין, בנק פלסטין הודיעו לו קודם לכן שחשבונו "הוקפא" באפריל 2015, לפני מות דודתו.

49. בנק פלסטין סיפק מצג שווא הן מכיוון שלא היה לו צורך במידע הזיהוי האישי של מר אלסלאמין כדי להעביר את הכספים לפי בקשתו, והן בגלל שבנק פלסטין מעולם לא התכוון להשתמש במידע זה לצרכים רשמיים של בנק פלסטין. על ידי השגת המסמכים של מר אלסלאמין, בנק פלסטין התכוון למעשה להעביר את המסמכים הללו באופן לא חוקי למודיעין הפלסטיני.

50. בעודו מסתמך על המצג של בנק פלסטין, מר אלסלאמין, דרך עורך דין הפלסטיני, שיתף פעולה עם בנק פלסטין ועם המפקח על החברות הפלסטיני במשרד הכלכלה הלאומי. מר אלסלאמין שאף לבסס: (א) את בעלותו על החשבון של אל-סרנה ו-(ב) את המטרה החוקית של ההעברה.

51. לצורך כך, מר אלסלאמין שלח לפקידים של בנק פלסטין עותק של הסכמת מכירת הנכס (בין מר אלסלאמין ובעלי הנכס בירושלים, אחד בין אל-סרנה ואל-תוראיה) וציולומים של הדרכון האמריקאי, הדרכון הישראלי, ותעודת הזהות של מר אלסלאמין. צילומים אלה ניתנים לזיהוי בקלות מכיוון שהם צולמו באמצעות האייפון של מר אלסלאמין.

52. ללא כל הצדקה חוקית ובהמשך לקנוניה להכפיש את שמו של מר אלסלאמין ולפגוע בו, בנק פלסטין מיד שלח את המסמכים האלה לשותפיו לקנוניה במודיעין הפלסטיני.

## המודיעין הפלסטיני מאיים ומטריד את בעל הנכס

53. בנק פלסטין ושירות המודיעין הפלסטיני תקשרו באופן קבוע בנוגע למר אלסלאמין ומכירת הנכס בירושלים. לאחר שנודע להם מבנק פלסטין שהקניין על הנכס בירושלים נקי ושמר אלסלאמין מנסה להשלים את העסקה, קציני המודיעין הפלסטיני זימנו את בנו של בעל הנכס וחקרו אותו.

54. קציני המודיעין הודיעו לבנו של בעל הנכס שהם יודעים שהוא ניסה להעביר את הנכס למר אלסלאמין. קציני המודיעין האשימו באופן כוזב את מר אלסלאמין בשיתוף פעולה עם ישראלים למכירת הנכס לישראלים יהודים, פשע שנחשב לבגידה וגזר דינו מוות תחת החוק הפלסטיני הישים.

55. קציני המודיעין ידעו שהאשמה זו שקרית משיתוף הפעולה שלהם עם בנק פלסטין. הם ידעו, לעומת זאת, שהעסקה לרכישת הנכס הייתה חוקית לחלוטין והתבצעה לטובת גוף באיחוד האמירויות הערביות.

56. קציני המודיעין דרשו שבנו של בעל הנכס יפגוש עם הנשיא הפלסטיני עבאס וימכור לו את הנכס, במקום למר אלסלאמין.

57. כשבנו של בעל הנכס סירב להיכנע לדרישות קציני המודיעין, הם הקפיאו גם את החשבונות שלו בבנק פלסטין.

## בנק פלסטין וקציני המודיעין הפלסטיני קושרים קשר להכפשת מר אלסלאמין

58. בעודו מנסה לספק לבנק פלסטין את המסמכים שדרש באמתלה של שיתוף פעולה עם מר אלסלאמין, המפקח על החברות הפלסטיני איפשר שיחת טלפון בין עורך הדין של מר אלסלאמין וחבר במודיעין הפלסטיני בנוגע לסיווג ביטחוני להעברת מניות של אל-סרנה באמצעות אישור צוואה.

59. מר אלסלאמין, בעצמו, יצר מיד קשר עם פקיד המודיעין הפלסטיני. הפקיד אמר למר אלסלאמין, "אני מאוד מעריך אותך. זהו קרב שמגיע מלמעלה." כמו כן הפקיד אמר למר אלסלאמין שהעסקה למכירת הנכס הייתה, למעשה, חוקית; ציין את

הביקורת שמר אלסלאמין השמיע נגד הנשיא הפלסטיני עבאס; והודה כי הוא ממלא הוראות שקיבל מהדרגים הגבוהים ביותר במודיעין הפלסטיני.

60. ב-7 לאפריל 2016, כשנה לאחר שמנעו למר אלסלאמין את הגישה לחשבון שלו לראשונה, בית הדין בערכאה ראשונה ברמאללה הוציא צו עיקול זמני, המורה על הקפאת החשבון של אל-סרנה. הסיבה שבית הדין הוציא צו עיקול זמני היא, לפי המידע ולפי החשד, כי בנק פלסטין והמודיעין הפלסטיני סיפקו לתובע הכללי הפלסטיני מידע כוזב ומשמיץ שרומז שמר אלסלאמין הוא סוכן של הממשלה הישראלית שהתכוון להעביר את הכנס בירושלים למתנחלים יהודים. אם בנק פלסטין וקציני המודיעין הפלסטיני היו מעבירים מידע אמיתי ולא משמיץ לתובע הכללי הפלסטיני, כלומר שהעסקה למכירת הכנס הייתה העברה חוקית לטובת גוף באיחוד האמירויות הערביות ושמר אלסלאמין אינו סוכן של הממשלה הישראלית, בין הדין לא היה מוציא את צו העיקול הזמני.

61. קציני המודיעין הפלסטיני, מצוידים במידע ומסמכים שמר אלסלאמין סיפק אך ורק לבנק פלסטין, פנו לבעל הכנס וניסו לשדל אותו לפרסם מאמר כוזב ומשמיץ אודות מר אלסלאמין, בטענה שהוא סוכן ישראלי שהתכוון להעביר את הכנס בירושלים ליהודים ישראלים. כשבעל הכנס סירב, הקושרים פרסמו מאמרים משמיצים בעצמם באמצעים אחרים.

62. לפי המידע ולפי החשד, בנק פלסטין וסוכנים של הממשלה הפלסטינית לא היה מעוניינים לפרסם הצהרות כוזבות ומשמיצות נגד מר אלסלאמין באופן ישיר. זאת מכיוון שהם ידעו שהעברת הכנס הייתה, למעשה, עסקת נדל"ן חוקית מול גוף באיחוד האמירויות הערביות. הממשלה הפלסטינית חששה מהעכרת היחסים הפוליטיים עם הממשלה של איחוד האמירויות הערביות. באופן דומה, בנק פלסטין חשש מהעכרת היחסים עם הממשלה של איחוד האמירויות הערביות, כי בין היתר, הוא היה צפוי לפתוח את סניפו הראשון בחוץ לארץ במרכז הפיננסים הבינלאומי בדובאי במאי 2016.

63. בהתאם לכך, בנק פלסטין וקציני המודיעין הפלסטיני גרמו לפרסום של מאמרים כוזבים ומשמיצים באמצעות אל-אח'באר, אתר חדשות מקוון בבעלות ובשליטת חיזבאללה. דבר זה איפשר לרשות הפלסטינית ולבנק פלסטין להסתיר את מעורבותם בפרסום המאמרים.

64. בנק פלסטין וקציני המודיעין הפלסטיני פרסמו את המאמר הראשון באמצעות אל-אח'באר ב-27 למאי 2016. המאמר הכיל מספר טענות כוזבות ומשמיצות. טענות אלו, אם קוראים אותן בהקשר הנכון, מרמזות או טוענות במפורש שמר אלסלאמין פעל כסוכן של הישראלים כדי למכור את הכנס ליהודים ישראלים, פשע שנחשב לבגידה ושעונשו מוות תחת החוק הפלסטיני הישים.

א.   למשל, נטען שהמטרה של מר אלסלאמין בעסקת למכירת הכנס "היא לחזור על נכבה בסדר גודל של הנכבה של 1948, ולהבריח [פלסטינים] מירושלים."

ב.   נטען שמר אלסלאמין מנסה "להפוך מבחינה דמוגרפית את העיר הכבושה לעיר הבירה של ישראל... מתוך תקווה שהדבר ישים קץ למחלוקות העיקריות העומדות בפני ההתנחלות, או במלים אחרות למכור את החלק החשוב ביותר ממה שנותר מפלסטין."

ג.   המאמר מרמז שמר אלסלאמין ניסה "לקנות נכסים מירושלמים, באמתלה [של] רכישתם מאנשים שלא גרים יותר בעיר העתיקה... או אף העובדה שנכסים אלה נמכרים לעמותות ישראליות... וכך תושבי השכונה יתעוררו לגלות מתנחלים הגרים בקרבם וטוענים שהם כעת הבעלים החוקיים."

ד.   המאמר טוען כי "המעסיק של מר אלסלאמין משתמש בו עבור עניינים מורכבים בהרבה מהמכירה של בתים בירושלים לישראלים!"

ה.   המאמר טוען שהמטרה של מר אלסלאמין היא "לייהד את האזור מסביב לאל-אקצא, ושנית, לייהד בפועל את מסגד [אל-אקצא]."

ו.   המאמר מרמז כי מר אלסלאמין מעורב "בשערוריות של צד ג' שמוכר למתנחלים."

ז.   המאמר טוען כי "קל מאוד ל[אלסלאמין] לטעון שהוא קנה את הבית על מנת 'להגן עליו' פן ייפול לידי מתנחלים. עם זאת, בהתחשב בהעברת הבית לחברה באיחוד האמיריויות הערביות בזמן שהבתים מסביב לנכס בשכונות אחרות נופלים, בזה אחר זה, לידיים יהודיות, בהתחשב בסכום הגבוה המשולם בעסקה, ... בהתחשב באמצעים שהוא נקט כדי להשיג אזרחות ישראליות, ובהתחשב באמצעים המשפטיים לרשותו, אותם לא היה יכול להשיג אילו העבודה הייתה "לאומית"... גורמים אלה מוכיחים בהכרח את אשמתו המוחלטת."

ח.   המאמר תוהה איך היה ביכולתו של מר אלסלאמין להקים את אל-סרנה "לאור העובדה שהוא נלחם והעליב את נשיא [הרשות הפלסטינית], מחמוד עבאס, וחשף מסמכים שחשפו [את השחיתות ברשות הפלסטינית]."

65.  המאמר מכיל תיאורים מפורטים של חוזה מכירת הנכס בין מר אלסלאמין ובין הבעלים של הנכס, מצד אחד, ואת החוזה בין אל-סרנה ואל-תוריאה מצד שני. המידע המפורט כלל לא רק את השמות של כל הצדדים, אלא גם מידע מפורט על הסדר התשלומים. כמו כן המאמר חשף שמר אלסלאמין כבר שילם את התשלום הראשוני בסך 1,520,000 דולר עבור הנכס.

66.  מר אלסלאמין סיפק מידע הנוגע לחוזים ולעסקאות אלו לבנק פלסטין בלבד. בנק פלסטין היה בהכרח מי שסיפק עותקים של מסמכים ורשומות אלה לפקידיי המודיעין הפלסטיני על מנת לקדם את הקנוניה שלהם להשמיץ ולפגוע במר אלסלאמין. חלקו של בנק פלסטין בקנוניה לא היה מוגבל לשיתוף מסמכים ומידע אודות מכירת הנכס. המאמר גם מציין תשלום של 10,000 דולר ממר אלסלאמין לעורך דין בשווייץ, מידע שהופיע רק בהצהרות החשבון בבנק פלסטין. בנק פלסטין פתח את ספרי החשבונות שלו לשותפיו לקנוניה במודיעין הפלסטיני על מנת להציג את מר אלסלאמין כסוכן ישראלי המתכוון להעביר נכס פלסטיני למתנחלים ישראלים.

67.  בנק פלסטין ורשויות המודיעין הפלסטיניות פרסמו מאמר נוסף באל-אח'באר, גם ב-27 למאי 2016. המאמר מכיל מספר טענות שקריות ומשמיצות נגד מר אלסלאמין וכן חדירה בוטה לפרטיותם.

ט.   המאמר טוען באופן כוזב שמר אלסלאמין זוכה להגנה של השב"כ, שירות הביטחון הפנימי של ישראל.

י.   המאמר רומז שמר אלסלאמין הוא סוכן של ישראל ושהשיג אזרחות ישראליות באופן בלתי חוקי. באופן ספציפי, המאמר מטיל ספק בעובדה שמר אלסלאמין נולד בחברון, בטענה שמי שנולד בחברון יכול לקבל רק תעודת זהות פלסטינית ירוקה, ולא תעודת זהות ישראלית כחולה.

יא.  המאמר מאשים את מר אלסלאמין על שהיה סגן נשיא בחברת ספנות מעורבת בפשעי מלחמה בלוב ורומז שמר אלסלאמין היה מעורב בחברת רישום ימי "עם יכולת ספציפית להסוואת הרישום והובלה לספינות כלי נשק בעסקאות שמעבר לגבול החוקי, הכוללות למשל את המזרח התיכון."

יב.  המאמר מאשים באופן כוזב את מר אלסלאמין בבגידה בכך שסייע בהעברת נכס מידיים פלסטיניות לידיים יהודיות ישראליות, עבירה שדינה מוות.

יג.  המאמר מכיל צילום של מסמכי הזהות, אותם העביר מר אלסלאמין לבנק פלסטין בלבד.

יד.  אחד מהמסמכים שפורסמו במאמר הוא תעודת הזהות הישראלית של מר אלסלאמין:



התמונה הנ"ל היא צילום מסך ישיר של המאמר. הגרסה של תעודת הזהות שפורסמה במאמר הופיעה ללא מחיקות וחשפה באופן פומבי את מידע הזיהוי האישי של מר אלסלאמין.

טו.    המאמר גם פרסם עותקים של הדרכון הישראלי והאמריקאי של מר אלסלאמין שהוא סיפק לבנק פלסטין בלבד, שוב, ללא המחיקות המופיעות כאן:





טז.   המאמר פרסם את כתובת ביתו של מר אלסלאמין בוושינגטון הבירה; תמונות של ביתו מהרחוב; פרטים על
המשכנתא ומסגרת האשראי שלו; ופרטים על התרומות הפוליטיות שלו בארצות הברית.

68. בעוד המאמר השני לא חושף את המניע של בנק פלסטין להכשפת מר אלסלאמין, כלומר, מכיוון שלא שילם לבנק פלסטין
שוחד בשווי של 500,000 דולר לשחרור הכספים של אל-סרנה, הוא כן חושף את המניע של שותפיו של בנק פלסטין לקנוניה.
המאמר מציין שמר אלסלאמין הוא "חתול שמן על אף מבנה גופו הרזה" אשר עובד עם חברת הון השקעות והון עצמי
"המנוהלת על ידי יהודי". המאמר מסביר כי "משנת 2011 לפחות, אלסלאמין החל לבקר את עבאס, וכינה אותו 'שגריר לא
אפקטיבי עבור פלסטין בארגונים בינלאומיים' כגון האומות המיוחדות." "הוא קרא לו להתפטר מספר פעמים." "ב-2011,
במסגרת תפקידו כחבר בקרן אמריקה החדשה, הוא פרסם מספר מאמרים באתר הקטארי של אל ג'זירה ובאתר הישראלי
"הארץ" וקרא לעבאס ולפיאד להתפטר אחרי 'שני עשורים של מדיניות כושלת.'"

69. לסיכום, בנק פלסטין ופקידי המודיעין הפלסטיני קשרו קשר לקידום האינטרסים המשותפים והבלתי חוקיים שלהם. בנק
פלסטין ניסה לשדל את מר אלסלאמין לשלם לו שוחד ולפיכך להכתים את המוניטין שלו כאדם מכובד המשמיע ביקורת
חריפה נגד השחיתות והפעילות הבלתי חוקית של הממשלה הפלסטינית הנוכחית. כאשר אלסלאמין דחה את פניית בנק
פלסטין לקחת חלק בשחיתות, בנק פלסטין והמודיעין הפלסטיני קשרו קשר להכפיש את שמו ולחדור לפרטיותו כנקמה
באמצעות כלי התקשורת אל-אח'באר, אשר מופעל וממומן על ידי חיזבאללה. הנזק שנגרם למר אלסלאמין מחדירות
ופעולות בלתי חוקיות אלו היה מהותי.

<u>הוצאת הדיבה, קשירת הקשר והחדירות לפרטיותו
שבוצעו על ידי בנק פלסטין גרמו לפגיעה קשה</u>

70.   כתוצאה מהההצהרות הכוזבות והדיבתיות של בנק פלסטין (ושל שותפיו לקשר), חווה מר אלסלמין פגיעה קשה
במחוז קולומביה. הוא קיבל איומים על חייו. חשבונות הדוא"ל והמדיה החברתית שלו נפרצו. הקריירה והמוניטין שלו בחוגים
פוליטיים פלסטיניים נפגעו בצורה משמעותית. הוא לא יכול לחזור לביתו בפלסטין, משום שהוא חושש ממעצר בלתי חוקי, כליאה
והוצאה להורג.

71. התנהלותו של בנק פלסטין גרמה לתוצאות כבדות משקל, כגון גלותו *דה פקטו* של מר אלסלמין ממקום הולדתו והאיומים על חייו, אך גם לנזק משמעותי, גם אם משני יחסית, למוניטין העסקי של מר אלסלמין, ליחסים החוזיים שלו ולתוחלות העסקיות שלו.

72. כתוצאה מהצהרות הדיבה של בנק פלסטין במאמרים ב"אל אכבר", הוכנס מר אלסלמין למעשה ל"רשימה השחורה" בקהילה העסקית של פלסטין.

73. מכירת הנכס הירושלמי מעולם לא יצאה אל הפועל בגלל הוצאת הדיבה והעיקול הבלתי חוקי של כספי אל-סרינה על ידי בנק פלסטין. כתוצאה מכך, נגרם למר אלסלמין נזק בסכום מחיר המכירה של הנכס, וכן הוכתם בצורה משמעותית המוניטין העסקי שלו בקהילה העסקית של המזרח התיכון.

74. בנוסף לאלה, לפני שהחלו בנק פלסטין ושותפיו לקשר את מסע הוצאת הדיבה שלהם, היה מר אלסלמין בעיצומו של תהליך תיווך הלוואה בסכום של 1 מיליארד דולר בין שתי ממשלות ריבוניות, האחת במזרח התיכון והשניה באפריקה. מר אלסלמין היה צפוי להרוויח עמלה של 10% בתמורה לתיווך ההלוואה, דהיינו, 100 מליון דולר. בנק פלסטין היה מודע היטב להזדמנות עסקית רווחית זו, משום שמר אלסלמין ניהל שיחות רבות עם אל-קוואסמי בנוגע לעסקה ואל-קוואסמי עודד אותו באופן פעיל לפתוח חשבון בבנק פלסטין על מנת לקבל את תשלום העמלה, לפני שמר אלסלמין סירב לשלם לבנק פלסטין שוחד בסכום 500,000 דולר.

**סעיף אישום 1**
**הוצאת דיבה כלשונה**

75. התובע טוען מחדש את ההאשמות שהוצגו לעיל ומאחדן כאילו הוצגו במלואן בהלן.

76. בנק פלסטין הביע בפני המודיעין הפלסטיני הצהרות כוזבות רבות בנוגע למר אלסלמין, המוציאות את דיבתו רעה, ובכללן שהוא מנסה לתווך בעסקת מקרקעין שתוביל להעברה של הנכס הירושלמי מתנחלים ישראלים, שמר אלסלמין היה סוכן של ישראל, שהוא קיבל הגנה מהשב"כ ושהוא ניסה להשתמש באל-סרינה צורך פעילויות בלתי חוקיות. בנק פלסטין הביע הצהרות אלה בפני התובע הכללי הפלסטיני ב-7 באפריל 2016 או בסמיכות לתאריך זה. אפילו היו הצהרות אלה בגדר "זכות מסויגת" (Qualified privilege), הביע בנק פלסטין את ההצהרות בזדון ממש, דהיינו, בנק פלסטין ידע שההצהרות היו כוזבות על סמך יחסיו ארוכי הימים עם מר אלסלמין. בנק פלסטין הביע את ההצהרות: (א) בכדי לנקום במר אלסלמין על סירובו לתת שוחד ו-(ב) על מנת לקדם את קשירת הקשר להוציא את דיבתו של מר אלסלמין רעה אל מול המודיעין הפלסטיני, על ידי השגת צו חוקי, לכאורה, להקפאת חשבון אל-סרינה.

77. בנק פלסטין ביטא בנוגע למר אלסלמין הצהרות כוזבות ודיבתיות נוספות, שאינן בגדר זכות, באמצעות אל אכבר בתאריך 27 למאי 2016 או בסמיכות לתאריך זה, כפי שהוצג בסעיפים 62-59 לעיל. בנק פלסטין גרם להצהרות אלה להתפרסם בפומבי ברשת האינטרנט, בה ניתן היה לגשת אליהן במחוז קולומביה, בפלסטין, באיחוד האמירויות הערביות ובמקומות אחרים

ובה נצפו במקומות אלה. בנק פלסטין ביטא את ההצהרות בזדון ממש, דהיינו, בנק פלסטין ידע שההצהרות היו כוזבות על סמך

יחסיו ארוכי הימים עם מר אלסלמין. בנק פלסטין הביע את ההצהרות: (א) בכדי לנקום במר אלסלמין על סירובו לתת שוחד ו-(ב)

על מנת לקדם את קשירת הקשר להוציא את דיבתו של מר אלסלמין רעה אל מול המודיעין הפלסטיני.

78.     בנוסף על הפרסום המקורי מאת בנק פלסטין של ההצהרות הכוזבות והדיבתיות באמצעות אל אכבר, אחראי בנק

פלסטין גם לפרסומים חוזרים רבים של ההצהרות הכוזבות והדיבתיות, שניתן היה לחזותם, באמצעות חשבונות טוויטר, פוסטים

בפייסבוק ואמצעים נוספים של רשתות חברתיות בשליטת השותפים לקשר של בנק פלסטין במודיעין הפלסטיני.

79.     ההצהרה שמר אלסלמין התכוון לתוץ בעסקת מקרקעין שתוצר להעברה של מקרקעין בבעלות פלסטינית

למתנחלים ישראלים היא בת-תביעה על פי חוק, משום שאם היא היתה נכונה, הדבר היה מהווה בגידה על פי החוק הפלסטיני.

80.     מר אלסלמין סבל גם מפגיעה מיוחדת משמעותית הנובעת מהצהרות הדיבה של בנק פלסטין. הוא סבל מפגיעה

במוניטין, הפסד של הזדמנויות עסקיות, כולל ההזדמנות לתוץ הלוואה של 1 מיליארד דולר עם עמלה של 10% והפסיד גם את

ההזדמנות לצבור שם טוב בקהילה העסקית במזרח התיכון על ידי השלמת הרכישה של הנכס הירושלמי.

81.     הוצאת דיבתו של מר אלסלמין רעה על ידי בנק פלסטין גרמה במישרין ובסמיכות לנזקים עבור מר אלסלמין,

בסכום שיוכח במשפט, אך בלא פחות מ-102,500,000.00$. מר אלסלמין מבקש גם פסיקה של פיצויים עונשיים, משום שבנק

פלסטין פעל מתוך מניע של רשע, זדון ממשי ומתוך כוונה לפגוע במר אלסלמין; והוא התנהג בשערוריתיות ובחוסר זהירות

בנוגע לביטחונו של מר אלסלמין.

## סעיף אישום 2
## קשירת קשר להוציא דיבה

82.     התובע טוען מחדש את ההאשמות שהוצגו לעיל ומאחדן כאילו הוצגו במלואן להלן.

83.     בנק פלסטין וחברי המודיעין הפלסטיני באו לכדי הסכם בתחילת 2015. מטרת ההסכם היתה לפגוע במר אלסלמין

באמצעות פרסומו של הצהרות דיבה. ההסכם של בנק פלסטין ושל שותפיו לקשר התאפשר באמצעות הקשרים הקרובים שבין

פקידים בכירים בבנק פלסטין ובין חברים בכירים במודיעין הפלסטיני וברשות הפלסטינית.

84.     בנק פלסטין קשר את הקשר להוציא את דיבתו של מר אלסלמין רעה כנקמה במר אלסלמין על סירובו לשלם לבנק

פלסטין שוחד של 500,000$. שותפיו לקשר של בנק פלסטין קשרו את הקשר על מנת לנקום במר אלסלמין על: (א) הביקורת

הגלויה שהשמיע נגד השחיתות של רשות הפלסטינית ושל נשיאה, מחמוד עבאס ו-(ב) סירובו לעסוק במעשי שחיתות דומים

ובכך להטיל דופי באמינותו שלו.

85.     בנק פלסטין ושותפיו לקשר גרמו לקשר לפגיעה במר אלסלמין על ידי פרסום הצהרות כוזבות ודיבתיות עליו לתובע הכללי

הפלסטיני, ובאמצעות אל אכבר גם לציבור הכללי, כולל הציבור במחוז קולומביה. בנק פלסטין ושותפיו לקשר פרסמו דברים אלה

כהמשך לקשר שקשרו לפגוע במר אלסלמין ולהכפישו.

.86        הקשר שקשרו בנק פלסטין עם המודיעין הפלסטיני להוצאת דיבתו של מר אלסלמין רעה גרם במישרין ובסמיכות

לנזק למר אלסלמין, בסכום שיוכח במשפט, אך בלא פחות מ-$102,500,000.00. מר אלסלמין מבקש גם פסיקה של פיצויים

עונשיים, משום שבנק פלסטין פעל מתוך מניע של רשע, זדון ממשי ומתוך כוונה לפגוע במר אלסלמין; והוא התנהל

בשערוריותיות ובחוסר זהירות בנוגע לבטחונו של מר אלסלמין.

### סעיף אישום 3
### חדירה לפרטיות – פרסום הקשור לחייו האישיים של אחר

.87        התובע טוען מחדש את ההאשמות שהוצגו לעיל ומאחדן כאילו הוצגו במלואן להלן.

.88        בנק פלסטין פרסם עניינים רבים הנוגעים לחייו האישיים של מר אלסלמין. עניינים אלה כללו פרסום עותקים לא

מצונזרים של תעודת הזהות הישראלית שלו, דרכונו הישראלי ודרכונו האמריקאי. בנק פלסטין פרסם גם פרטים על הרכישה

המתוכננת של הנכס הירושלמי על ידי מר אלסלמין ואל-סרינה וכן פרטים על דפי חשבון הבנק של מר אלסלמין ושל אל-סרינה.

.89        חשיפה של מידע המאפשר זיהוי אישי ומידע הנוגע להעברות עסקיות ולחשבונות עסקיים פרטיים לצד שלישי

כלשהו תהיה פוגענית עבור כל אדם סביר, קל וחומר חשיפה בפורום ציבורי כמו אל אכבר.

.90        לא היה עניין ציבורי לגיטימי שהצדיק חשיפה של מידע המאפשר זיהוי אישי של מר אלסלמין. כמו כן, לא היה עניין

ציבורי לגיטימי שהצדיק חשיפה של עסקת הנכס הירושלמי החוקית לגמרי.

.91        החדירה שביצע בנק פלסטין לפרטיותו של מר אלסלמין גרמה במישרין ובסמיכות לנזקים עבור מר אלסלמין,

בסכום שיוכח במשפט, אך בלא פחות מ-$102,500,000.00. מר אלסלמין מבקש גם פסיקה של פיצויים עונשיים, משום שבנק

פלסטין פעל מתוך מניע של רשע, זדון ממשי ומתוך כוונה לפגוע במר אלסלמין; והוא התנהל בשערוריותיות ובחוסר זהירות

בנוגע לבטחונו של מר אלסלמין.

### סעיף אישום 4
### חדירה לפרטיות – הצגה כוזבת

.92        התובע טוען מחדש את ההאשמות שהוצגו לעיל ומאחדן כאילו הוצגו במלואן להלן.

.93        בנק פלסטין העניק פרסום רב לפרטי עסקת הנכס הירושלמי, אך הציגם באופן כוזב ומטעה על מנת ליצור מראית

עין של חוסר נאמנות ואי-חוקיות.

.94        בנק פלסטין שטח את פרטי עסקת הנכס הירושלמי באופן שיהיה פוגעני עבור האדם הסביר, דהיינו, בנק פלסטין

שטח את המידע באופן שמרמז שמר אלסלמין הנו סוכן זול של הממשלה הישראלית, זוכה להגנה של השב"כ ובוגד בפלסטין.

.95        בנק פלסטין ידע למעשה את הפרטים האמיתיים והחוקיים הקשורים לעסקת הנכס הירושלמי, דרך המגעים

הסדירים שהיו לו עם מר אלסלמין, עם אחיו ועם עורך דינו. בנק פלסטין מעולם לא ניסה לחזור בו מהפרסומים הכוזבים

והדיבתיים או להפריכם, למרות היותו מודע לחלוטין לאמת.

96. הצגתו של מר אלסלמין באופן כוזב גרמה במישרין ובסמיכות לנזקים עבור מר אלסלמין, בסכום שיוכח במשפט, אך בלא פחות מ-$102,500,000.00. מר אלסלמין מבקש גם פסיקה של פיצויים עונשיים, משום שבנק פלסטין פעל מתוך מניע של רשע, זדון ממשי ומתוך כוונה לפגוע במר אלסלמין; והוא התנהל בשערוריתיות ובחוסר זהירות בנוגע לבטחונו של מר אלסלמין.

**סעיף אישום 5**
**הפרעה נזיקית לקיום חוזה**

97. התובע טוען מחדש את ההאשמות שהוצגו לעיל ומאחדן כאילו הוצגו במלואן בהלן.

98. מר אלסלמין קיים יחסים חוזיים תקפים עם לאמיה גודה ועם בנה ובא כוחה, עדיב ג'אוואד גודה, לצורך רכישת הנכס הירושלמי.

99. בנק פלסטין ידע על היחסים החוזיים, משום שמר אלסלמין סיפק לבנק פלסטין העתק של הסכם המכר ומשום שמר אלסלמין שוחח עם פקידים בכירים בבנק פלסטין אודות עסקת המקרקעין בהזדמנויות רבות.

100. באמצעות הקשר שקשר בנק פלסטין עם המודיעין הפלסטיני להוציא דיבתו של מר אלסלמין רעה, הוצאה הדיבה של מר אלסלמין על ידי בנק פלסטין וסירובו של בנק פלסטין לשחרר את הכספים מחשבון אל-סרינה עבור התשלום האחרון שנותר חייב על פי הסכם המכר – אלמלא ישלם מר אלסלמין שוחד של $500,000 - גרם בנק פלסטין להפרה של הסכם המכר.

101. ההפרעה המזיקה של בנק פלסטין בחוזה של מר אלסלמין לרכישת חלקת המקרקעין בירושלים, גרמה לנזק משמעותי לשמו ולמעמדו בקהילות העסקיות בפלסטין ובאיחוד האמירויות הערביות, ונזקים בסכום שיוכח במשפט, אך בלא פחות מ-$2,500,000.00. מר אלסלמין מבקש גם פסיקה של פיצויים עונשיים, משום שבנק פלסטין פעל מתוך מניע של רשע, זדון ממשי ומתוך כוונה לפגוע במר אלסלמין; והוא התנהל בשערוריתיות.

**סעיף אישום 6**
**הפרעה נזיקית ליחסים עסקיים**

102. התובע טוען מחדש את ההאשמות שהוצגו לעיל ומאחדן כאילו הוצגו במלואן בהלן.

103. מר אלסלמין קיים יחסים עסקיים תקפים עם ממשלה של מדינה במזרח התיכון ושל מדינה באפריקה, לתיווך הלוואה בסך 1 מיליארד דולר עבור המדינה האפריקאית. מר אלסלמין היה אמור להרוויח עמלה בסך %10 מתיווך מוצלח של ההלוואה.

104. בנק פלסטין ידע על יחסים עסקיים אלה. מר אלסלמין שוחח עם אל קוואסמי, פקיד בכיר בבנק פלסטין, אודות עסקת ההלוואה, והלז עודד את מר אלסלמין לפתוח חשבון בבנק פלסטין על מנת לקבל את תשלום העמלה.

105. באמצעות הקשר שקשר בנק פלסטין עם המודיעין הפלסטיני להוציא דיבתו של מר אלסלמין רעה, הוצאה הדיבה של מר אלסלמין על ידי בנק פלסטין, החדירות שביצע בנק פלסטין לפרטיותו של מר אלסלמין ומעשי הנזיקין האחרים שתוארו

לעיל, גרם בנק פלסטין לנזק לשמו ולמעמדו של מר אלסלמין בקהילות העסקיות הרלוונטיות, עד אשר הצדדים בהסכם ההלוואה הנדון הפסיקו את יחסיהם עם מר אלסלמין.

106.    ההפרה הנזקית שבוצעה על ידי בנק פלסטין ליחסים העסקיים של מר אלסלמין בתיווך הלוואה בסך 1 מיליארד דולר גרמה לנזק משמעותי לשמו ולמעמדו בקהילה העסקית במזרח התיכון ולנזקים בסכום שיוכח במשפט, אך בלא פחות מ-$100,000,000.00. מר אלסלמין מבקש גם פסיקה של פיצויים עונשיים, משום שבנק פלסטין פעל מתוך מניע של רשע, זדון ממשי ומתוך כוונה לפגוע במר אלסלמין; והוא התנהל בשערוריתיות.

**סעיף אישום 7**
**הונאה**

107.    בתאריך 18 במרץ 2016, הציג בנק פלסטין, באמצעות ראש מחלקת התפוצות, סלים חודלי, מצג שווא למר אלסלמין, כאילו הוקפא חשבון אל-סרינה משום שבנק פלסטין נזקק למסמכים נוספים הנוגעים לזהותו ולעזבונה של דודתו, על מנת לקבוע למי היתה הסמכות לניהול החשבון.

108.    מצג השווא היה מצג שווא מוחשי. בנק פלסטין ציין שהחשבון הוקפא מסיבות אחרות, אך כעת הוא הציג כאילו ביטול ההקפאה הוא רק עניין של נ ירת מנהלתית הקשורה לעזבונה של מרם סלאמין.

109.    בנק פלסטין ידע שהמצג היה כוזב, משום שמעולם לא היה בכוונתו לשחרר את הכספים בחשבון אל-סרינה ללא קשר למסמכים שסיפק מר אלסלמין.

110.    בנק פלסטין התכוון לרמות את מר אלסלמין למטרות איסוף מידע רגיש ביותר המאפשר זיהוי אישי, כגון צילומים של דרכוניו של מר אלסלמין ושל תעודת הזהות הישראלית שלו, בהם יוכל להשתמש אחר כך על מנת להוציא את דיבתו רעה ולחדור לפרטיותיו.

111.    מר אלסלמין הסתמך על מצג השווא שהציג בנק פלסטין בפניו ב-18 במרץ 2016. אם היה מר אלסלמין יודע את כוונתו האמיתית של בנק פלסטין בבקשתו את המסמכים, לעולם היה מספק אותם לבנק פלסטין. תוך שהוא מסתמך על מצג השווא של בנק פלסטין, סיפק למעשה מר אלסלמין ישירות ודרך עורך דינו תיעוד עשיר ופרטי הנוגע למר אלסלמין ולעזבונה של דודתו.

112.    ההונאה שביצע בנק פלסטין נגד מר אלסלמין גרמה במישרין ובסמיכות לנזקים עבור מר אלסלמין, בסכום שיוכח במשפט, אך בלא פחות מ-$102,500,000.00. מר אלסלמין מבקש גם פסיקה של פיצויים עונשיים, משום שבנק פלסטין פעל מתוך מניע של רשע, זדון ממשי ומתוך כוונה לפגוע במר אלסלמין; והוא התנהל בשערוריתיות ובחוסר זהירות בנוגע לבטחונו של מר אלסלמין.

**סעיף אישום 8**
**קשירת קשר אזרחית**

113.    התובע טוען מחדש את ההאשמות שהוצגו לעיל ומאחדן כאילו הוצגו במלואן להלן.

114.   בנק פלסטין וחברים במודיעין הפלסטיני התקשרו בתחילת 2015 בהסכם, שמטרתו היתה לפגוע במר אלסלמין

באמצעות מעשים בלתי חוקיים רבים, כולל חדירה לפרטיותו, הפרה נזיקית לחוזה, הפרה נזיקית להזדמנות עסקית, שידול

למתן שוחד ודיווחים כוזבים לנציגי הממשלה הפלסטינית, כולל התובע הכללי הפלסטיני. ההסכם של בנק פלסטין ושל שותפיו

לקשר התאפשר באמצעות הקשרים הקרובים שבין פקידים בכירים בבנק פלסטין ובין חברים בכירים במודיעין הפלסטיני וברשות

הפלסטינית.

115.   בנק פלסטין קשר את הקשר כנקמה במר אלסלמין על סירובו לשלם לבנק פלסטין שוחד של $500,000. שותפיו

לקשר של בנק פלסטין קשרו את הקשר על מנת לנקום במר אלסלמין על: (א) הביקורת הגלויה שהשמיע נגד השחיתות של רשות

הפלסטינית ושל נשיאה, מחמוד עבאס ו-(ב) סירובו לעסוק במעשי שחיתות דומים ובכך להטיל דופי באמינותו שלו.

116.   בנק פלסטין ושותפיו לקשר גרמו לפגיעה במר אלסלמין על ידי פרסום הצהרות כוזבות ודיבתיות עליו לתובע הכללי

הפלסטיני, ובאמצעות אל אכבר גם לציבור הכללי, כולל הציבור במחוז קולומביה, חדירה לפרטיותו והפרעה לפעילויותיו העסקיות.

בנק פלסטין ושותפיו לקשר ביצעו כל אחד ממעשים אלה כהמשך לקשר שקשרו לפגוע במר אלסלמין ולהכפישו.

117.   הקשר שקשרו בנק פלסטין עם המודיעין הפלסטיני גרם במישרים ובסמוכות לנזק למר אלסלמין, בסכום שיוכח

במשפט, אך בלא פחות מ-$102,500,000.00. מר אלסלמין מבקש גם פסיקה של פיצויים עונשיים, משום שבנק פלסטין פעל מתוך

מניע של רשע, זדון ממשי ומתוך כוונה לפגוע במר אלסלמין; והוא התנהל בשערוריריתיות ובחוסר זהירות בנוגע לבטחונו של מר

אלסלמין.

**דרישה למשפט עם חבר מושבעים**

התובע דורש משפט עם חבר מושבעים בכל הנושאים הניתנים לשיפוטו שכזה.

**בקשה לפיצוי**

אי לזאת, מבקש התובע פיצוי ופסק דין נגד הנתבע, כדלהלן:

א.   פסיקת דין נגד הנתבע ולטובת התובע בכל אחד מהסעיפים שנטענו בתביעה זו;

ב.   פסיקה של פיצויי נזיקין עבור התובע בסך שיקבע במשפט, אך בלא פחות מ-$102,500,000.00 ועוד ריבית

שלפני פסק הדין ושלאחריה, פיצויים מיוחדים, פיצויים עונשיים ופיצויים מותרים אחרים, כמו גם שכר טרחה לעורכי הדין והוצאות

סבירים;

ג.   שמירה על סמכות השיפוט על מנת לאפשר לתובע להגיש לבית הדין בקשות לפקודות או להוראות נוספות, כפי

שתידרשנה ותתאמנה לצורך פרשנות או יישום של פקודות כלשהן שינתנו בתביעה זו, לצורך שינוי פקודות אלה, לאכיפת הציות להן

ולעונישת הפרות שלהן; וכן

ד.   פסיקה של כל פיצוי אחר שבית הדין רואה כצודק וכראוי.

תאריך: 5 באוקטובר 2016                                       מוגש בכבוד,

**פאדי אלסלמין**

באמצעות: /s/ נייג'ל ל. וויקינסון

נייג'ל ל. וויקינסון (Nigel L. Wilkinson) [מס. רשיון במחוז קולומביה 466221]

בנג'מין ג. צ'ו (Benjamin G. Chew) [מס. רשיון במחוז קולומביה 418577]

רורי א. אדאמס (Rory E. Adams) [מס. רשיון במחוז קולומביה 986549]

Manatt, Phelps & Phillips LLP
1050 Connecticut Avenue NW, Suite 600
Washington, DC 20037

טלפון: 6637-585 202-1+

פקס: 6600-585 202-1+

דוא"ל: nwilkinson@manatt.com

דוא"ל: bchew@manatt.com

דוא"ל: radams@manatt.com

*עורכי הדין עבור התובע, פאדי אלסלמין*

203694329.1

17

## גיליון נלווה אזרחי

JS-44 (מהדורה DC 7/16)

| הנתבעים | | I. (א) התובעים |
|---|---|---|
| בנק פלסטין, המועצה המחוקקת הפלסטינית | | פאדי אל-סאלאמין |

| | | (ב) מחוז המגורים של התובע הראשון ברשימה **מחוז קולומביה** (מלבד בתיקי תובעים מארה"ב) |
|---|---|---|
| מחוז המגורים של הנתבע הראשון ברשימה _____ (בתיקי תובעים מארה"ב בלבד) | | |
| הערה: במקרים של הפקעת קרקעות, השתמש במיקום חלקת האדמה הרלוונטית | | |

| עורכי הדין (אם ידוע) | | (ג) עורכי הדין (שם, כתובת ומספר טלפון של המשרד) |
|---|---|---|
| | | Nigel L. Wilkinson |
| | | Manatt, Phelps & Phillips LLP |
| | | 1050 Connecticut Avenue NW, Suite 600 |
| | | Washington, DC 20036 |
| | | (202) 585-6637 |

### III. אזרחות הצדדים העיקריים (סמן x בתיבה אחת עבור התובע ובתיבה אחת עבור הנתבע)
עבור מקרי גיוון בלבד!

| נתבע | תובע | | נתבע | תובע | |
|---|---|---|---|---|---|
| ○ 4 | ○ 4 | המקום המאוגד או העיקרי של העסק במדינה זו | ○ 1 | ● 1 | אזרח של מדינה זו |
| ○ 5 | ○ 5 | המקום המאוגד או העיקרי של העסק במדינה אחרת | ○ 2 | ○ 2 | אזרח של מדינה אחרת |
| ○ 6 | ○ 6 | מדינה זרה | ● 3 | ○ 3 | אזרח או נתין של מדינה זרה |

### II. בסיס השיפוט
(סמן x בתיבה אחת בלבד)

| ○ 1 | תובע של ממשלת ארה"ב |
|---|---|
| ○ 2 | נתבע של ממשלת ארה"ב |
| ○ 3 | שאלה פדרלית (ממשלת ארה"ב אינה צד לה) |
| ● 4 | גיוון (ציין את אזרחותם של הצדדים בסעיף III) |

### IV. הקצאת התיק ואופי התביעה
(סמן x בקטגוריה אחת, א עד י"ד, המייצגת באופן הטוב ביותר את עילת התביעה שלך, ו-א **אחד** באופי התביעה המתאים)

| ד. צו מניעה זמני | ג. ביקורת רשות מנהלית | ב. נזקי גוף/רשלנות | א. הגבלים עסקיים |
|---|---|---|---|
| עבור קטגוריה זו של הקצאת התיק ניתן לבחור כל אופי תביעה מכל קטגוריה. | ☐ 151 חוק הביטוח הרפואי | ☐ 310 מטוס | ☐ 410 הגבלים עסקיים |
| | **ביטוח לאומי** | ☐ 315 חבות מוצר מטוס | |
| *(אם הגבלים עסקיים, אזי גוברת קטגוריה א)* | ☐ 861 רשעיית בעלות השפעה חזקה (1395ff) | ☐ 320 תקיפה, הוצאת דיבה ולשון הרע | |
| | ☐ 862 ריאות שחורות (923) | ☐ 330 חבות מעבידים פדרלית | |
| | ☐ 863 תביעה נכות לעובד מבוטח/אלמן (405(g)) | ☐ 340 ימי | |
| | ☐ 864 נכות ביטוח לאומי סעיף XVI | ☐ 345 חבות מוצר ימי | |
| | ☐ 865 ביטוח פרישה ושארים (405(g)) | ☐ 350 רכב ממונע | |
| | **חוקים אחרים** | ☐ 355 חבות מוצר רכב ממונע | |
| | ☐ 891 חוקי חקלאות | ☐ 360 נזקי גוף אחרים | |
| | ☐ 893 ענייני איכות הסביבה | ☐ 362 רשלנות רפואית | |
| | ☐ 890 חוקים סטטוטוריים אחרים (אם מעורבת רשות מנהלית) | ☐ 365 חבות מוצר | |
| | | ☐ 367 חבות מוצר נזקי גוף רפואי/תרופתי | |
| | | ☐ 368 חבות מוצר אסבסט | |

| | | ☐ ה. אזרחי כללי (אחר) |
|---|---|---|
| ☐ ט. ייצוג עצמי אזרחי כללי | או | |

| ☐ ט. ייצוג עצמי אזרחי כללי | או | |
|---|---|---|
| **חילוט/קנס** | **פשיטת רגל** | **חוקי זכויות** |
| ☐ 625 תפיסת רכוש הקשורה לסמים 21 USC 881 | ☐ 422 ערעור 27 USC 158 | ☐ 210 הפקעת קרקעות |
| ☐ 690 אחר | ☐ 423 ביטול 28 USC 157 | ☐ 220 עיקול |
| | | ☐ 230 השכרה, חכירה ופינוי |
| **חוקים אחרים** | **עתירות אסירים** | ☐ 240 נזיקין לקרקע |
| ☐ 470 ארגון מושחת ומושפע מסחטנות | ☐ 375 חוק טענות שווא | ☐ 535 עונש מוות | ☐ 245 חבות מוצר נזיקי |
| ☐ 480 אשראי צרכני | ☐ 376 תשובה שחיתותיות (31 USC 3729(a)) | ☐ 540 צו בית המשפט העליון ואחר | ☐ 290 כל נכס נדל"ני אחר |
| ☐ 490 טלוויזיה בכבלים/לוויין | ☐ 400 חלוקה מדינתית מחדש | ☐ 550 זכויות אזרח | |
| ☐ 850 ניירות ערך/סחורות/ בורסה | ☐ 430 בנקים ובנקאות | ☐ 555 תנאי כליאה | **רכוש אישי** |
| ☐ 896 בוררות | ☐ 450 מסחר/שערי לשכת המסחר הבינלאומית/ וכולי | ☐ 560 עציר אזרחי – תנאי כליאה | ☐ 370 הונאה אחרת |
| ☐ 899 חוק הליך מינהלי/ביקורת או ערעור על החלטת הרשות | ☐ 460 גירוש | | ☐ 371 אמת בהשאלה |
| ☐ 950 חוקתיות של חוקי המדינה | ☐ 462 בקשת האזרחות | **זכויות רכוש** | ☒ 380 נזק רכוש אישי אחר |
| ☐ 890 חוקים סטטוטוריים אחרים (אם אינם ביקורת רשות מנהלית או חוק פרטיות) | ☐ 465 חוקי הגירה אחרים | ☐ 820 זכויות יוצרים | ☐ 385 חבות מוצר פגיעה ברכוש |
| | | ☐ 830 פטנט | |
| | | ☐ 840 סימן מסחרי | |
| | | **תביעות מס פדרליות** | |
| | | ☐ 870 מסים (תובע או נתבע מארה"ב) | |
| | | ☐ 871 מס הכנסה-צד ג' 26 USC 7609 | |

| ⚪ י. הלוואת סטודנט | ⚪ ט. חוק חופש המידע/הפרטיות | ⚪ ח. אפליה בתעסוקה | ⚪ ז. צו הבאה/2255 |
|---|---|---|---|
| ☐ 152 היפרעות הלוואת סטודנט שלא נפרעה (למעט יוצאי צבא) | ☐ 895 חוק חופש המידע ☐ 890 חוקים סטטוטוריים אחרים (אם חוק הפרטיות) *(אם ייוצג עצמו, בחר באפשרות זו)* | ☐ 442 זכויות אזרח – תעסוקה (קריטריונים: גזע, מגדר/מין, מוצא לאומי, אפליה, נכות, גיל, דת, נקמה) *(אם ייוצג עצמו, בחר באפשרות זו)* | ☐ 530 צו הבאה – כללי ☐ 510 בקשה לביטול גזר דין ☐ 463 צו הבאה – עציר זר |

| ⚪ י"ד. הרכב של שלושה שופטים | ⚪ י"ג. חוזה | ⚪ י"ב. זכויות אזרח אחרות (אבטלה) | ⚪ י"א. עבודה / חוק הבטחת הכנסה לפרישת עובדים (אבטלה) |
|---|---|---|---|
| ☐ 441 זכויות אזרח – הצבעה (אם חוק זכויות ההצבעה) | ☐ 110 ביטוח ☐ 120 ימי ☐ 130 חוק מילר ☐ 140 מסמך סחיר ☐ 150 היפרעות תשלום יתר ואכיפת דין ☐ 153 היפרעות תשלום יתר של תגמולי יוצאי צבא ☐ 160 תביעות בעלי מניות ☐ 190 חוזים אחרים ☐ 195 חבות מוצר חוזה ☐ 196 זיכיון | ☐ 441 הצבעה (אם אינו חוק זכויות ההצבעה) ☐ 443 שיכון/דיור ☐ 440 זכויות אזרח אחרות ☐ 445 אמריקאים עם מוגבלויות – תעסוקה ☐ 446 אמריקאים עם מוגבלויות – אחר ☐ 448 השכלה | ☐ 710 חוק תקני עבודה הוגנים ☐ 720 יחסי עבודה/הנהלה ☐ 740 חוק עבודת רכבות ☐ 751 חוק חופשה משפחתית ורפואית ☐ 790 התדיינויות עבודה אחרות ☐ 791 חוק הבטחת הכנסה לפרישת עובדים |

**V. מקור**

| ⚪ 8 התדיינויות רב-מחוזיות – הגשה ישירה | ⚪ 7 ערעור בפני שופט מחוזי משטח שלום | ⚪ 6 התדיינויות רב-מחוזיות | ⚪ 5 הועבר ממחוז אחר (פרט) | ⚪ 4 הוחזר או נפתח מחדש | ⚪ 3 הושב במעצר – מבית המשפט לערעורים | ⚪ 2 הורחק מבית המשפט של המדינה | ◉ 1 הליך מקורי |
|---|---|---|---|---|---|---|---|

**VI. עילת התביעה** (צטט את החוק האזרחי בארה"ב שלפיו הנך מגיש תביעה זו וכתוב הצהרה קצרה אודות העילה):
28 USC 1332, השמצה, קנוניה במטרה להשמיץ ומזיק קשורים בין הצדדים המנומנט

| **VII. מבוקש בכתב התביעה** | בדוק אם זוהי **תובענה ייצוגית** לפי התקנות הפדרליות של סדר הדין האזרחי 23 (FRCP) | דרישה ל- $102,500,000 דרישת חבר המושבעים: | סמן **כן** רק אם נדרשת בכתב התביעה ☐ כן ☒ לא |
|---|---|---|---|

| **VIII. תיק(ים) קשור(ים)** אם יש | (ראה הוראה) כן ☐ לא ☒ | אם כן, נא מלא את טופס התיק הקשור |
|---|---|---|

| תאריך: 05/10/2016 | חתימת עורך-דין רשום | /n/ ג'יי-ג'יל ל. וילקינסון |
|---|---|---|

## הוראות למילוי גיליון נלווה אזרחי JS-44
### רשות גיליון נלווה אזרחי

הגיליון הנלווה האזרחי JS-44 והמידע הכלול במסמך זה אינם מחליפים ואינם משלימים את הטענות וההגשות והשירותים של כתבי הטענות או ניירות אחרים כנדרש בחוק, למעט כפי שנקבע בפסקי הדין המקומיים של בית המשפט. טופס זה, שאושר על ידי מועצת המשפט של ארצות הברית בספטמבר 1974, נדרש לשימושו של פקיד בית המשפט לצורך ייזום גיליון התיקים האזרחיים. בעקבות זאת, מוגש גיליון נלווה אזרחי לפקיד בית המשפט לגבי כל תלונה אזרחית שהוגשה. להלן עצות למילוי הגיליון הנלווה האזרחי. עצות אלה הופעוצו לספרות הרומיות שעל הגיליון הנלווה.

**I.   מחוז המגורים של התובע/הנתבע הראשונים ברשימה** (ב) מחוז המגורים: השתמש במספר 11001 כדי לציין אם התובע הוא התובע הוא תושב וושינגטון הבירה, במספר 88888 אם התובע הוא תושב ארצות הברית אך לא וושינגטון הבירה, ובמספר 99999 אם התובע נמצא מחוץ לארצות הברית.

**III.   אזרחות הצדדים העיקריים:** סעיף זה ימולא <u>אך ורק</u> אם ציון האזרחות נבחר כבסיס השיפוט לפי סעיף II.

**IV.   הקצאת התיק ואופי התביעה:** ההקצאה של שופט לתיק תהיה תלויה בקטגוריה שבה תבחר, זו המייצגת באופן הטוב ביותר את עילת התביעה <u>העיקרית</u> המצויה בתלונתך. ניתן לבחור רק בקטגוריה <u>אחת</u>. כמו כן, <u>חייב</u> לבחור אופי תביעה מתאים בקטגוריה <u>אחד</u> הנמצאת בקטגוריה של התיק.

**VI.   עילת התביעה:** צטט את החוק האזרחי בארה"ב שלפיו הנך מגיש תביעה זו וכתוב הצהרה קצרה אודות העילה העיקרית.

**VIII.   תיק(ים) קשור(ים), אם יש:** אם ציינת כי קיים תיק קשור, עליך למלא טופס תיק קשור, אותו ניתן לקבל במשרד הפקיד.

בשל הצורך בפרטים מדויקים ומלאים, עליך להבטיח את דיוק המידע המסופק לפני החתימה על הטופס.

AO 440 (גרסה 06/12) הודעה על תביעה אזרחית

---

**בית משפט מחוזי של ארצות הברית של אמריקה**

עבור

מחוז קולומביה ▼



פאדי אלסלאמין
(Fadi Elsalameen)

_____

התובע/ים

נגד

בנק פלסטין
(Bank of Palestine, P.L.C.)

_____

הנתבע/ים

תביעה אזרחית מספר 1976-cv-16 ABJ

**הודעה על תביעה אזרחית**
**בנק פלסטין**

לכבוד: (שם וכתובת הנתבע)

בניין בנק פלסטין
רחוב נזלת אל-מקאמה
עין מזבח
רמאללה, השטחים הפלשתינאיים

הוגשה נגדך תביעה משפטית.

על פי תקנה 12 של תקנות סדר הדין הפדרלי חלה עליך חובה להמציא תשובה לתובע בעניין התלונה או הבקשה המצורפות בזאת תוך 21 ממועד מסירת הודעה זו לידיך (לא כולל את היום שבו קיבלת אותה)  –  או, לחילופין, תוך ארכה של 60 יום אם אתה מהווה את ארצות הברית של אמריקה או סוכנות של ארצות הברית של אמריקה, או נושא משרה או עובד של ארצות הברית כהגדרת מונחים אלה בתקנה 12 (א) (2) או (3) של תקנות סדר הדין הפדרלי. על התשובה או הבקשה יהיה להימסר לתובע, או לעורך דינו של התובע, ששו וכתובתו הם המפורטים להלן:

Nigel L. Wilkinson
Mannat, Phelps & Phillips LLP
1050 Connecticut Avenue NW, Suite 600
Washington, DC 20036
nwilkinson@manatt.com

אם לא תשיב ייתנן נגדך פסק דין בהיעדר בעל הדין בנושא הסעד הנתבע בתביעה. כמו כן, אתה נדרש להמציא את תשובתך או את בקשתך לבית המשפט.

פקיד בית המשפט

/s/ Michael Darby                          תאריך: 10/6/2016
חתימת הפקיד או סגנו

AO 440 (מהדורה 06/12) זימון שניתן בתובענה אזרחית (עמוד 2)

תובענה אזרחית מס' 1976-cv-16

# הוכחת הגשה

*(אין להגיש סעיף זה לבית המשפט אלא אם הדבר נדרש בתקנות הפדרליות של סדר הדין האזרחי 4 (י"ב))*

זימון זה עבור *(שם האדם ותוארו, אם יש)* _____

התקבל על ידי ב*(תאריך)* _____ .

☐   אני הגשתי באופן אישי את הזימון לאדם ב*(מקום)* _____

ב*(תאריך)* _____

או

☐   השארתי את הזימון במקום מגוריו או מקום משכנו הרגיל של האדם אצל *(שם)* _____

_____ , אדם בגיל ושיקול דעת מתאימים המתגורר שם,

ב*(תאריך)* _____ , ושלחתי עותק לכתובת הידועה האחרונה של האדם; או

☐   הגשתי את הזימון ל*(שם האדם)* _____ .

אשר מונה בחוק לקבל הגשות להליכים מטעם *(שם הארגון)* _____

ב*(תאריך)* _____ ; או

☐   החזרתי את הזימון בלתי מבוצע בגלל _____ ; או

☐   אחר *(פרט)*:

שכרי הנו $_____ לנסיעות ו-$_____ לשירותים, עבור סכום כולל של $   0.00

אני מצהיר, בכפוף לעונשים הקבועים בחוק לגבי שבועת שקר, כי מידע זה נכון.

תאריך: _____               _____
                                                                *חתימת המגיש*

                                                        _____
                                                        *שם ותואר באותיות דפוס*

                                                        _____
                                                        *כתובת המגיש*

מידע נוסף בדבר ניסיון ההגשה, וכולי: