**IN THE UNITED STATED DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FADI ELSALAMEEN**
2856 Arizona Avenue NW
Washington, DC 20016

       Plaintiff,

    v.

**BANK OF PALESTINE, P.L.C.**
Bank of Palestine Building
Nazlet Al Mahkamah Street
Ain Misbah
Ramallah, Palestinian Territory

       Defendant.

Case No. 16-cv-1976 (ABJ)

**HEARING REQUESTED**

**<u>DEFENDANT BANK OF PALESTINE, P.L.C.'S</u>**
**<u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................1

STATEMENT OF FACTS .......................................................................................2

The Complaint's Limited Allegations Related to Jurisdiction ...........................2

The Complaint's Substantive Allegations ........................................................4

The Causes of Action ......................................................................................8

ARGUMENT ...........................................................................................................8

I.     Plaintiff's Complaint Must Be Dismissed For Lack Of Personal Jurisdiction
       Pursuant to Rule 12(b)(2).............................................................................8

       A.     Legal Standard ..................................................................................8

       B.     Analysis.............................................................................................9

              1.     This Court Lacks General Jurisdiction over the Bank of Palestine,
                     A Business Organization that Is Neither Headquartered, Nor
                     "Essentially at Home," in the District.........................................9

              2.     Specific Personal Jurisdiction Over Bank Of Palestine Would Also
                     Be Improper Because Its Contacts With The District Of Columbia
                     Are Entirely Unrelated To Plaintiff's Claims. ...........................13

II.    Plaintiff's Complaint Must Also Be Dismissed For Failure To State A Claim
       Upon Which Relief Can Be Granted Pursuant to Rule 12(b)(6). ...................17

       A.     Legal Standard ................................................................................17

       B.     Analysis...........................................................................................19

              1.     The Complaint Fails to State a Claim For Defamation............19

              2.     The Complaint Fails to Adequately Allege that the Supposed
                     Defamatory Statements Were Made with Actual Malice .........21

              3.     Counts II and VIII Are Also Defective Because Plaintiff Has
                     Failed to Adequately Allege the Existence of a Conspiracy....24

              4.     Count III Should Be Dismissed For Failure To State A Claim For
                     Invasion of Privacy – Publicity Concerning Private Life of Another........26

5.    Count VII Should Be Dismissed For Failure To State A Claim For
      Fraud .......................................................................................................27

CONCLUSION...............................................................................................................29

# TABLE OF AUTHORITIES*

**PAGE(S)**

**CASES**

*Acosta Orellana v. CropLife Int'l,*
  711 F. Supp. 2d 81 (D.D.C. 2010) ...............................................................18, 25, 26

*Allen v. Russian Fed'n,*
  522 F. Supp. 2d 167 (D.D.C. 2007) ..........................................................................11

*\*American Association of Cruise Passengers v. Cunard Line, Ltd.,*
  691 F.Supp. 379 (D.D.C. 1987) .................................................................................15

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ............................18, 21, 24

*Bailer v. Erie Ins. Exch.,*
  344 Md. 515, 687 A.2d 1375 (1997) ...................................................................26, 27

*\*Bancoult v. McNamara,*
  214 F.R.D. 5 (D.D.C. 2003)........................................................................................17

*Beeton v. Dist. of Columbia,*
  779 A.2d 918 (D.C.2001) ...........................................................................................20

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)....................................18, 21

*\*Bell-Boston v. Manpower Int'l Staffing Agency,*
  61 F. Supp. 3d 74 (D.D.C. 2014) ...............................................................................20

*Bender v. Rocky Mountain Drilling Assocs.,*
  648 F. Supp. 330 (D.D.C. 1986) ................................................................................18

*Brunson v. Kalil & Co., Inc.,*
  404 F. Supp. 2d 221 (D.D.C. 2005) ...........................................................................13

*Budik v. Howard Univ. Hosp.,*
  986 F. Supp. 2d 1 (D.D.C. 2013) ...............................................................................26

*Bush v. Butler,*
  521 F. Supp. 2d 63 (D.D.C. 2007) .......................................................................25, 26

*\*Carpenter v. King,*
  792 F. Supp. 2d 29 (D.D.C. 2011), *aff'd,* 473 F. App'x 4 (D.C. Cir. 2012)............19

*Coleman v. Silver*,
939 F. Supp. 2d 27 (D.D.C. 2013) .......................................................................8

*Crane v. N.Y. Zoological Society*,
894 F.2d 454 (D.C.Cir.1990) .............................................................................9

*\*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ..........................................................................10, 11, 12

*\*Day v. Corner Bank (Overseas) Ltd.*,
789 F. Supp. 2d 150 (D.D.C. 2011) ...............................................................12, 15

*Diario El Pais, S.L. v. Nielsen Co. (US), Inc.*,
No. 07 Civ. 11295, 2008 WL 4833012 ..................................................................24

*E. Sav. Bank, FSB v. Papageorge*,
31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015)...............................18

*Egiazaryan v. Zalmayev*,
No. 11 CIV. 2670 PKC, 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011)....................................23

*\*Estate of Klieman, et al. v. Palestinian Authority, et al.*,
82 F. Supp. 3d 237 (D.D.C. 2015) ...............................................................11, 12

*Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
749 A.2d 724 (D.C. 2000) ...............................................................................19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)...........................................................................9, 10, 11

*Graves v. United States*,
961 F. Supp. 314 (D.D.C. 1997) ........................................................................19

*Gregorio v. Gordon*,
215 F. Supp. 3d 1 (D.D.C. 2015) .......................................................................13

*\*GTE New Media Servs. Inc. v. BellSouth Corp.*,
199 F.3d 1343 (D.C. Cir. 2000) ........................................................................14

*Hakky v. Wash. Post Co.*,
No. 9 Civ. 2406, 2010 WL 2573902 (M.D. Fla. June 24, 2010) ...........................................24

*Heard v. Johnson*,
810 A.2d 871 (D.C. 2002) ..............................................................................27

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
466 U.S. 408 (1984)...........................................................................9, 11, 17

*Hourani v. Mirtchev,
   943 F. Supp. 2d 159 (D.D.C. 2013) ........................................................................20, 21

*Hourani v. Psybersolutions LLC,
   164 F. Supp. 3d 128 (D.D.C. 2016) ........................................................................22, 23

I Mark Mktg. Servs., LLC v. Geoplast S.P.A.,
   753 F. Supp. 2d 141 (D.D.C. 2010) ..............................................................................15

Ihebereme v. Capital One, N.A.,
   730 F. Supp. 2d 40 (D.D.C. 2010) ................................................................................29

*In re Terrorist Attacks on Sept. 11, 2001,
   295 F. Supp. 3d 416 (S.D.N.Y. 2018) ..........................................................................14

Int'l Shoe Co. v. Washington,
   326 U.S. 310 (1945) .............................................................................................9, 10, 14

*Inv. Co. Inst. v. United States,
   550 F. Supp. 1213 (D.D.C. 1982) .................................................................................16

*Jankovic v. Int'l Crisis Grp.,
   494 F.3d 1080 (D.C. Cir. 2007) ....................................................................................20

*Jankovic v. Int'l Crisis Grp.,
   822 F.3d 576 (D.C. Cir. 2016) ......................................................................................22

*Jones v. D.C.,
   241 F. Supp. 3d 81 (D.D.C. 2017) ...............................................................................28

Knapp Med. Ctr. v. Burwell,
   192 F. Supp. 3d 129 (D.D.C. 2016) ................................................................................4

Kowal v. MCI Commc'ns, Corp.,
   16 F.3d 1271 (D.C. Cir.1994) .......................................................................................19

Linchpins of Liberty v. United States,
   71 F. Supp. 3d 236 (D.D.C. 2014) .................................................................................4

Mastro v. Potomac Elec. Power Co.,
   447 F.3d 843 (D.C.Cir.2006) ........................................................................................20

*Mattiaccio v. DHA Grp., Inc.,
   20 F. Supp. 3d 220 (D.D.C. 2014) ....................................................................19, 24, 25

McCreary v. Health,
   No. Civ.A. 04-0623 .................................................................................................25, 26

*McQueen v. Woodstream Corp.*,
    248 F.R.D. 73 (D.D.C. 2008) ................................................................18

*Myers v. Holiday Inns, Inc.*,
    915 F. Supp. 2d 136 (D.D.C. 2013) ..............................................8, 9, 14

*Naegele v. Albers*,
    355 F. Supp. 2d 129 (D.D.C. 2005) .......................................................8

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .............................................................................21

*Nikbin v. Islamic Republic of Iran*,
    471 F. Supp. 2d 53 (D.D.C. 2007) ........................................................17

*Price v. Socialist People's Libyan Arab Jamahiriya*,
    294 F.3d 82 (D.C. Cir. 2002) ................................................................13

*Randolph v. ING Life Ins. & Annuity Co.*,
    973 A.2d 702 (D.C. 2009) ..............................................................26, 27

*Rossmann v. Chase Home Finance, LLC*,
    772 F. Supp. 2d 169 (D.D.C.2011) ....................................................8, 9

*Sanders v. Kerry*,
    180 F. Supp. 3d 35 (D.D.C. 2016) ........................................................18

*Satterlee v. Comm'r of Internal Revenue*,
    195 F. Supp. 3d 327 (D.D.C. 2016) ......................................................14

*Schwartz v. CDI Japan, Ltd.*,
    938 F. Supp. 1 (D.D.C. 1996) ...............................................................14

*Shoppers Food Warehouse v. Moreno*,
    746 A.2d 320 (D.C. 2000) ....................................................................15

*Slinski v. Bank of Am., N.A.*,
    981 F. Supp. 2d 19 (D.D.C. 2013) ........................................................18

*Sokolow v. Palestine Liberation Org.*,
    138 S. Ct. 1438 (2018) .........................................................................11

*Solers, Inc. v. Doe*,
    977 A.2d 941 (D.C. 2009) ....................................................................20

*United States ex rel. Joseph v. Cannon*,
    642 F.2d 1373 (D.C. Cir.1981) .............................................................19

*United States ex rel. Williams v. Martin–Baker Aircraft Co., Ltd.*,
  389 F.3d 1251 (D.C. Cir.2004) ................................................................................19

*United States v. Kiefer*,
  228 F.2d 448 (D.C. Cir. 1955) ................................................................................27

*United States v. Philip Morris, Inc.*,
  116 F. Supp. 2d 116 (D.D.C. 2000) .........................................................................9

*Urban Institute v. FINCON Services*,
  681 F. Supp. 2d 41 (D.D.C. 2010) ................................................................11, 12

*Walden v. Fiore*,
  571 U.S. 277, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) ...........................................14

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016)..........................................................................11, 12

*World–Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ...............................................................................................14

## STATUTES

United States Code title 31 Section 5318(k) ............................................................3

Anti-Money Laundering and Terrorism Financing Decree Law ...................................6

D.C. Code Ann. § 13–423 .......................................................................................13

D.C. Code Ann. § 13-423(a) and (b) .............................................................13, 15, 16

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ...................................................................................... passim

Fed. R. Civ. P. 12(b)(2)....................................................................................2, 8, 17

Fed. R. Civ. P. 12(b)(6).................................................................................2, 17, 18

*Authorities upon which we chiefly rely are marked with an asterisk.

## INTRODUCTION

On October 5, 2016, Fadi Elsalameen ("Elsalameen" or "Plaintiff") filed a Complaint in this Court against the Bank of Palestine, P.L.C. ("Bank of Palestine" or "the Bank")—a Palestinian corporation headquartered in Ramallah, Palestine, with negligible ties to the United States—related to conduct that he alleges occurred entirely outside of the United States.[1]  This Complaint suffers from two fatal defects, each of which independently warrants its dismissal. *First,* this Court has neither general personal jurisdiction nor specific personal jurisdiction over the Bank of Palestine.  *Second*, the Complaint fails to state a claim upon which relief can be granted.  Even assuming that the well pled allegations alleged in the Complaint are true, which the Bank adamantly denies, Plaintiff fails to allege a sufficient factual basis to support his allegations that the Bank caused the publication of any defamatory statements.  Six of the eight

---

[1] Following the filing of the Complaint, Plaintiff attempted to serve the Bank of Palestine pursuant to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 658 U.N.T.S. 163 (the "Hague Convention") through Israel.  On February 3, 2017 (Dkt. No. 6), and March 20, 2017 (Dkt. No. 7), Plaintiff filed status reports regarding efforts to effect service.  On May 2, 2017, Plaintiff filed a Status Report and Motion to Deem Service Effected (Dkt. No. 8), which the Court denied.  On June 30, 2017, Plaintiff filed a Status Report and Renewed Motion to Deem Service Effected (Dkt. No. 9), which was also denied.  On August 31, 2017, Plaintiff filed a Status Report and Renewed Motion to Deem Service Effected (Dkt. No. 10).  In response, the Court entered a Minute Order on September 6, 2017, providing that "[t]he motion to deem service effected will be denied without prejudice. While it does appear that plaintiff has complied with the requirements of the Hague Convention, the Court believes that it is more fair to deem service to be effected either when the return receipt has been received, or six months after the date that Israel sent the papers to the defendant bank within the Palestinian Authority.  On February 28, 2018, plaintiff filed his Status Report and Renewed Motion to Deem Service Effected (Dkt. No. 15).  On May 25, 2018 this Court issued an opinion finding that plaintiff had satisfied the service requirements of the Hague convention through his efforts with the Israeli government and deeming service effected (Dkt. No. 17).  By using Israel, Plaintiff avoided the Palestinian National Authority ("PNA")—the proper government for the Bank of Palestine.  The PNA, of course, is not a signatory to the Hague Convention, so this avenue would have been unavailable to the Plaintiff had he attempted to effect service through the proper government.  The Bank of Palestine reserves the right to argue that it was not properly served with the Complaint and does not waive this argument by filing the instant dispositive motion.

counts in the Complaint, Counts I, II, IV-VI, and VIII, are predicated on the Bank of Palestine allegedly defaming Plaintiff. Plaintiff, though, fails to adequately allege that the Bank caused the publication of any defamatory statements. Because each of these counts is dependent on the defamation claim, this defect renders these six counts deficient. Count III of Plaintiff's Complaint is also deficient because it fails to plead with sufficient factual support the requisite elements for a claim of invasion of privacy in this jurisdiction. The lone remaining count, Count VII, alleges fraud, but fails to do so with sufficient particularity to satisfy Federal Rule of Civil Procedure Rule 9(b).

In light of these two fatal deficiencies, the Bank moves to dismiss the Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF FACTS[2]

### The Complaint's Limited Allegations Related to Jurisdiction

Plaintiff's Complaint has limited factual allegations related to personal jurisdiction. It alleges that Fadi Elsalameen is a dual United States and Israeli citizen of Arab descent who resides in the District of Columbia. (Complaint, ¶3.) It further alleges that Bank of Palestine, a public shareholding company, is one of the largest national banks in Palestine and maintains its principal place of business in Ramallah, Palestine. (Complaint, ¶6.) The Complaint does not, and could not, allege that the Bank operates any branches or subsidiaries in the United States. Like many foreign financial institutions, the Bank maintains a correspondent banking relationship with the New York branch of a U.S. bank and has filled out a form to appoint a New York-based corporation as the entity authorized to accept service of legal process on behalf of

---

[2] The Bank denies the factual allegations in the Complaint and assumes that the well-pled facts are true only for purposes of this Motion.

the Bank from the Secretary of Treasury or the Attorney General of the United States pursuant to

Section 5318(k) of Title 31, United States Code.  (Complaint, ¶6.)  While still insufficient to

establish sufficient contacts for purposes of jurisdiction, the Complaint has not even alleged that

the Bank maintains any correspondent banking relationship in the District of Columbia or that it

has designated anyone within the District of Columbia to accept legal process.

While the Complaint claims that the Bank has "significant contacts with the District of

Columbia," (Complaint, ¶7), the Complaint alleges only five such contacts.  The first four of

these contacts relate to two organizations—one quasi-governmental, the International Finance

Corporation ("IFC") and one U.S. governmental, the Overseas Private Investment Corporation

("OPIC")—that conduct business with the Bank *in Palestine*, and the fifth contact relates to the

Bank's membership in an international think tank based in the District:

- "Bank of Palestine receives guarantees covering payment risk for trade-related transactions, permitting it to issue letters of credit for export-import transactions through the International Finance Corporation's Global Trade Finance Program. The International Finance Corporation is an arm of the World Bank, located as 2121 Pennsylvania Avenue, NW, Washington DC 20433." (Complaint, ¶ 7.)

- "Bank of Palestine has received tens of millions of dollars in original commitments from the District of Columbia-based International Finance Corporation." (Complaint, ¶ 8.)

- "Bank of Palestine's further cooperation with the International Finance Corporation resulted in an equity investment of up to 10 percent, a student loan facility supported by the Palestinian Education Fund, and a housing finance initiative to provide affordable housing." (Complaint, ¶ 9.)

- "Bank of Palestine's affordable housing initiative is a $500 million program that provides loans to low- and middle-income Palestinian households.  Of the $500 million, Bank of Palestine received $325 million from the Overseas Private Investment Corporation, a U.S. Government development finance institution located at 1100 New York Avenue, NW, Washington, DC 20527.   The International Finance Corporation provided $75 million in loan guarantees for the affordable housing initiative." (Complaint, ¶ 10.)

- "Bank of Palestine is a member of the Institute of International Finance, a think tank that actively advocates for regulatory, financial, and economic policies that

are in the interests of its members. The Institute of International Finance is headquartered at 1333 H Street NW, Suite 800E, Washington, DC 20005." (Complaint, ¶ 11.)

While noting that IFC and OPIC are located in the District of Columbia, and that these agencies are arms of the World Bank and the U.S. Government, (Complaint, ¶¶ 7-8), respectively, the Complaint fails to allege that the Bank conducted its business with IFC and OPIC in the District of Columbia. Moreover, even a cursory review of the websites these agencies maintain[3] reveals that both IFC and OPIC finance projects exclusively outside the United States and that the Bank's business with IFC and OPIC were for projects outside of the United States. By way of example, the $500 million program the Complaint touts at Paragraph 11 was for low- and middle-income Palestinian households *in Palestine*. *See* https://www.opic.gov/press-releases/2010/500-million-mortgage-facility-launched-palestine ("The mortgage program is expected to be operational in late 2010, in coordination with plans to develop new residential neighborhoods for Palestine's working and middle classes.").

The Complaint alleges no other jurisdictional facts, and it bears noting that the Complaint fails to allege any nexus between these alleged jurisdictional facts and any of the alleged conduct that gives rise to Plaintiff's causes of action.

### The Complaint's Substantive Allegations

The Complaint, which is long on innuendo and short on detail, alleges a supposed defamation scheme that occurred entirely outside of the United States. Without providing a shred of factual support, the Complaint alleges that the Bank and "Palestinian Intelligence

---

[3] The Bank notes that the Court can appropriately take judicial notice of the public records on an agency's website. *See Knapp Med. Ctr. v. Burwell*, 192 F. Supp. 3d 129, 131 n.1 (D.D.C. 2016) (citing *Linchpins of Liberty v. United States*, 71 F. Supp. 3d 236, 242 (D.D.C. 2014) (noting it appropriate, on a motion to dismiss, to take judicial notice of information on a federal agency's website). While the information on OPIC's website is informative, it is not necessary that the Court consider the information in order to resolve the motion to dismiss.

agents" conspired to establish an elaborate ruse designed to gather personal identifiable information from Elsalameen. (Complaint, ¶¶ 46-48.)  The Complaint never once identifies who the Palestinian Intelligence officials are or any other facts regarding their identity, such as the branch or government agency with which they were affiliated.  While the Complaint contains sweeping and unsupported allegations regarding possible alleged motivations to conspire, the Complaint lacks any concrete facts to support the creation and existence of a conspiracy between the Bank and "Palestinian Intelligence."  (Complaint, ¶ 26.)  The Complaint alleges that a Bank employee told Plaintiff on March 18, 2016, or March 20, 2016, that his account with the Bank was frozen and requested additional documentation from Plaintiff in order to unfreeze the account.  (Complaint, ¶¶ 47, 107.)  The Complaint alleges—without citing any facts to support the allegation—that at the time the Bank employee requested this information, the Bank never intended to unfreeze the account and instead requested the information with the intent of using it in connection with a defamation scheme.  (Complaint, ¶ 110.)  The Complaint alleges that the information Plaintiff provided consisted of a property sales agreement, photographs of Plaintiff's passport, and Plaintiff's Israeli identify card.  (Complaint, ¶ 51.)

After obtaining this information, the Bank and "Palestinian Intelligence" allegedly provided the Palestinian Attorney General "false and defamatory information implying that Mr. Elsalameen was an agent of the Israeli government who intended to transfer the Jerusalem Property to Israeli Jewish settlers."  (Complaint, ¶ 60.)  The Complaint makes the conclusory claim that the information supposedly provided to the Attorney General caused the Court of First

Instance to issue a Provisional Seizure Order, but fails to allege any facts to support this claim. (Complaint, ¶ 60.)[4]

The Complaint also alleges that the information gathered by the Bank served as the basis for two negative articles published in a foreign news outlet, Al Akhbar,[5] about Plaintiff. The Complaint concedes, though, that the Bank had no direct role in publishing the articles. (Complaint, ¶ 63.) Instead, the Complaint claims that the Bank was hesitant to publish anything directly so it "caused" the two articles to be published: "Bank of Palestine and Palestinian intelligence caused false and defamatory articles to be published…" (Complaint, ¶63); "Bank of Palestine and Palestinian Intelligence authorities published a second article through Al Akhbar…" (Complaint, ¶67); and "Bank of Palestine caused these statement [sic] to be published publicly on the internet" (Complaint, ¶77). The Complaint fails to allege what specific information or documents were transferred, how the Bank allegedly transferred the information, and further fails to explain how the Bank purportedly "caused" the publication of the alleged defamatory statements. There is no allegation that defamatory statements were made or published in the United States.

The Complaint claims that, as a result of these articles, none of which were published in the United States, Plaintiff has "experienced profound harm in the District of Columbia," (Complaint, ¶ 70), but fails to provide any facts to support this claim. Rather he alleges that he has received death threats (but does not allege these were in the District of Columbia), his email

---

[4] The Bank is located in Ramallah, Palestine and is regulated by the Palestinian Monetary Authority. The Bank is subject to the applicable laws of Palestine, including the Anti-Money Laundering and Terrorism Financing Decree Law, No. (20) of 2015 and to the jurisdiction of courts in Palestine.

[5] The Complaint alleges that Al Akhbar is an online news publications owned and controlled by Hezbollah. (Complaint, ¶63.) The publisher is not a party to this lawsuit.

and social media accounts were allegedly hacked,[6] his reputation *in Palestine* has been damaged, and he cannot return to Palestine.  (*Id.*)  He further alleges that he has been "essentially black-listed in the Palestinian business community," (Complaint, ¶ 72), and that "[t]he sale of the Jerusalem Property has never come to fruition," (Complaint, ¶¶ 73, 74).  In each instance, the alleged impact to Plaintiff of the Bank's alleged conduct is strictly limited to Palestine or Jerusalem, or otherwise entirely outside of, and unrelated to, the United States.  The Complaint alleges that the Bank and "Palestinian Intelligence" engaged in this conduct "due to [Elsalameen's] political affiliations and public statements made against the Palestinian regime," (Complaint, p. 1), and because of his alleged refusal to pay certain bribes he claims were demanded of him (Complaint, ¶ 36).

In addition to alleging the existence of a supposed defamation scheme in Palestine, the substantive allegations also include factual allegations that would support the conclusion that Plaintiff is a limited-purpose public figure.  For instance, the Complaint states that Plaintiff "is a frequent critic of corrupt and opaque practices among individuals within Palestinian government bodies and the current administration [and] has been an outspoken critic of the current President of the Palestinian National Authority, Mahmoud Abbas." (Complaint, ¶ 5.)  The Complaint further acknowledges that Plaintiff "has published articles critical of the Palestinian National Authority through Al Jazeera, Huffington Post, and the Maan News Agency[; has had his] criticisms . . . featured in multiple other news outlets, including the Times of Israel, the Economist, and Haaretz[; and] has given critical interviews on CNN and CCTV America."

---

[6] Notably, Plaintiff does not explain anywhere in the Complaint how the alleged hacking of his social media accounts relates to his alleged causes of action.  He further fails to allege that the Bank was in any way responsible for the alleged hack or blacklisting and he fails to rule out that the transfer of the alleged information occurred as a result of the alleged hacking of his social media accounts or otherwise as a result of his own conduct.

(Complaint, ¶ 21.)  Moreover, the Complaint concedes that "Elsalameen's social media accounts, through which he regularly criticizes the Palestinian National Authority and President Abbas, have more than 600,000 followers in Palestine and elsewhere." (Complaint, ¶ 21.)   The Complaint concludes that "Elsalameen's well-published and outspoken criticisms of the Palestinian National Authority and President Abbas earned him notoriety and respect throughout Palestine and the Middle East."  (Complaint, ¶ 22.)

### The Causes of Action

In total, the Complaint alleges eight causes of action.  (Complaint, ¶¶ 75-117.)  Six of these eight claims—defamation *per se*, conspiracy to defame, invasion of privacy (false light), tortious interference with contract, tortious interference with business relations, and civil conspiracy—are predicated on the alleged foreign defamation scheme.  (*See* Counts I, II, IV, V, VI, and VIII, Complaint, ¶¶ 75-81, 83-86, 100, 105, 116.)  Count III relates to the Bank allegedly making public certain private facts about Plaintiff.   Count VII is predicated on the Bank employee's attempts to obtain Plaintiff's personal information—allegedly under false pretenses.  The Complaint seeks $102,500,00.00 in damages for this alleged conduct.  (Complaint, ¶ 86.)

## ARGUMENT

## I.  PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(B)(2)

### A.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) challenges whether personal jurisdiction exists.  To withstand a defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of making a prima facie showing of specific and pertinent jurisdictional facts.  *Myers v. Holiday Inns, Inc.*, 915 F. Supp. 2d 136, 139 (D.D.C. 2013); *Coleman v. Silver*, 939 F. Supp. 2d 27, 28 (D.D.C. 2013) (citing *Rossmann v.*

*Chase Home Finance, LLC,* 772 F. Supp. 2d 169, 171 (D.D.C.2011) and *Crane v. N.Y. Zoological Society,* 894 F.2d 454, 456 (D.C.Cir.1990)); *see also Naegele v. Albers,* 355 F. Supp. 2d 129, 136 (D.D.C. 2005); and *United States v. Philip Morris, Inc.,* 116 F. Supp. 2d 116, 121 (D.D.C. 2000)).   Unlike a 12(b)(6) motion to dismiss, this court need not treat all of a plaintiff's allegations as true when making a personal jurisdiction determination.   *Myers v. Holiday Inns, Inc.*, 915 F. Supp. 2d 136, 139 (D.D.C. 2013) (citing *Philip Morris, Inc.,* 116 F. Supp. 2d at 120 n. 4).

**B.    Analysis**

1.    *This Court Lacks General Jurisdiction over the Bank of Palestine, A Business Organization that Is Neither Headquartered, Nor "Essentially at Home," in the District.*

General or "all purpose" personal jurisdiction is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.   *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 & nn. 8-9 (1984) (noting that when the cause of action does not arise out of, or relate to, the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation).   "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."   *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).   A determination that general jurisdiction exists is a finding that carries significant ramifications for a corporation.   As the Supreme Court has noted, when general jurisdiction exists, plaintiffs can sue a corporation in the jurisdiction for "causes of action arising from dealings entirely distinct from those activities."

9

*Int'l Shoe Co.* at 318. The Supreme Court, in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), recently considered what level of contact with a state would suffice to establish that a corporation was "at home" in that state. In *Daimler*, the plaintiffs brought suit in California. *Daimler AG*, 134 S. Ct. at 751. The Supreme Court noted that one of Daimler's subsidiaries had a number of contacts with California, including, operating multiple facilities in California; being the largest supplier of luxury vehicles in California; and deriving over two percent of its *global* sales revenue from California. The Court held that while the plaintiffs might have established continuous contact with California, even Daimler's contacts with California through its subsidiary were not so substantial to render it "at home" in California. *Id.* at 761-62. The Court explained that when assessing contacts to determine whether general, or "all-purpose" jurisdiction exists, the test is not simply whether the corporation's contacts were "continuous and systematic" but rather "whether the foreign corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler AG*, 134 S. Ct. at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Court further noted that a corporation that does business in multiple jurisdictions "can scarcely be deemed at home in all of them." *Id.* at n.20. In sum, Daimler may have had substantial contact with California, but its contact with California was not so sufficient that California should have jurisdiction over Daimler for alleged transgressions regardless of where in the world the transgressions occurred.

Here, the Bank of Palestine's alleged contacts with the District—having business dealings with two entities based in the District and membership in a District-based think tank (Complaint, ¶¶ 7-11)—pale in comparison to the contacts Daimler, through its subsidiary, had in California. Against the backdrop of *Daimler*, no colorable argument exists that Plaintiff's

allegations in this case could suffice to establish general, or all-purpose, jurisdiction.  And, not surprisingly, there is authority from this jurisdiction that allegations similar to Plaintiff's allegations fail to establish general jurisdiction.

In *Urban Institute v. FINCON Services*, 681 F. Supp. 2d 41, 46 (D.D.C. 2010), the plaintiff attempted to establish jurisdiction in the District of Columbia by virtue of the defendant purportedly engaging in business with the World Bank, inferring that "because the World Bank is an important client to [the defendant] and because the World Bank has its headquarters in Washington, D.C., [the defendant] must do business in the District."  *Id.*  The court, however, disagreed and concluded that such contacts were insufficient to confer general jurisdiction because sporadic contacts and brief presence in a forum do not suffice to support general jurisdiction. *Id.* at 46 (citing *Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 196-198 (D.D.C. 2007) and *Helicopteros Nacionales de Colom.*, 466 U.S. at 417-418).  Similarly, in *Estate of Klieman, et al. v. Palestinian Authority, et al.*, 82 F. Supp. 3d 237, 244-45 (D.D.C. 2015), the court concluded that it could not exercise general personal jurisdiction over the PA and the PLO because the alleged contacts, including engaging in speechmaking and participating in other public appearances in the United States; public relations activities associated with the D.C. office of the PLO Mission to the United States; maintaining a PLO office in Washington, D.C.; conducting fundraising activities and other public speaking engagements; hiring a lobbying firm to develop a public relations campaign; entering into commercial contracts in the United States; and maintaining bank accounts in New York, were insufficient to establish general jurisdiction under the standard set forth in *Goodyear* and *Daimler*.  *See also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 344 (2d Cir. 2016), cert. denied sub nom.  *Sokolow v. Palestine Liberation Org.*, 138 S. Ct. 1438 (2018) (citing *Daimler* and holding that the activities of the

defendants' (the Palestinian Liberation Organization and the Palestinian Authority) mission in Washington, D.C – which were limited to maintaining an office in Washington, promoting the Palestinian cause in speeches and media appearances, and retaining a lobbying firm – were insufficient to render the defendants 'at home' in the United States and therefore insufficient to establish general jurisdiction over the defendants.)

In short, *Daimler*, *Urban Institute*, *Estate of Klieman*, *Waldman*, and general equitable principles all drive towards one conclusion: Plaintiff's jurisdictional allegations are woefully inadequate to establish general jurisdiction—a standard tantamount with establishing that the Bank's contacts with the District are so substantial that this Court should have personal jurisdiction over any of the Bank's alleged transgressions, regardless of where in the world the transgressions allegedly occurred.[7]

---

[7] While the Complaint does not reference it as an example of the Bank's supposed "significant" contacts with the District, it should be noted that Paragraph 6 of the Complaint references the fact that the Bank maintains both a correspondent account and a registered agent in New York. (Complaint, ¶ 6.)  To the extent Plaintiff intended these allegations to support a claim of general jurisdiction, case law from this District makes clear that such an argument lacks merit.  In *Day v. Corner Bank (Overseas) Ltd.*, 789 F. Supp. 2d 150 (D.D.C. 2011), a sister court in this jurisdiction ruled that it could not exercise general jurisdiction over a Bahamian bank and its Swiss parent, even if the banks had correspondent accounts in New York and maintained an agent for service of process in New York. The Court noted two problems with such a theory of general jurisdiction.  First, the existence of bank accounts in New York did not establish the bank's presence in the District of Columbia.  *Id.* at 156 ("The Court, however, is at a loss as to how the existence of bank accounts in *New York* can possibly establish the banks' presence in *the District of Columbia*.").   Second, even if the correspondent account was maintained in the District, such an account, would not, in and of itself, establish general jurisdiction.  *Id.* at 157.

2.   *Specific Personal Jurisdiction Over the Bank Of Palestine Would Also Be Improper Because Its Contacts With The District Of Columbia Are Entirely Unrelated To Plaintiff's Claims.*

This Court also lacks specific personal jurisdiction over Bank of Palestine.[8]  This Court may exercise specific jurisdiction over a defendant only if the plaintiff has pleaded "facts sufficient to satisfy (1) the District of Columbia's long-arm statute, and (2) the constitutional requirements of due process."  *See Gregorio v. Gordon*, 215 F. Supp. 3d 1, 5 (D.D.C. 2015) (citing *Cannon v. Wells Fargo Bank*, N.A., 926 F.Supp.2d 152, 166 (D.D.C. 2013)).

The District of Columbia long-arm statute provides that:

"[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's - - (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; (5) having an interest in, using, or possessing real property in the District of Columbia; (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or (7) marital or parent and child relationship in the District of Columbia [in some circumstances]."

D.C. Code Ann. § 13-423(a).  Significantly, the long-arm statute further provides that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him."  D.C. Code Ann. § 13-423(b).  "Because § 13–423(a)(1) is limited by § 13–423(b), this court is limited to exercising specific jurisdiction in that § 13–423(b) disallows 'claims that do not relate to the acts that form

---

[8]  The Complaint does not allege that the Bank is subject to the D.C. long-arm statute. Nonetheless, even analyzing the allegations in the Complaint, it is clear that Plaintiff has not alleged sufficient jurisdictional facts to bring the Bank within the Court's long-arm jurisdiction under § 13–423 of the D.C. Code.

the basis for personal jurisdiction.'"  *Myers v. Holiday Inns, Inc.*, 915 F. Supp. 2d 136, 140

(D.D.C. 2013) (quoting *Brunson v. Kalil & Co., Inc.,* 404 F. Supp. 2d 221, 227 (D.D.C. 2005)

(citing *Schwartz v. CDI Japan, Ltd.,* 938 F. Supp. 1, 5 (D.D.C. 1996)).

The Due Process Clause of the Fifth Amendment requires the plaintiff to demonstrate

"'"minimum contacts' between the defendant and the forum establishing that 'the maintenance of

the suit does not offend traditional notions of fair play and substantial justice.'"  *GTE New Media*

*Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945); *see also Price v. Socialist People's Libyan Arab*

*Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002).  In short, "the defendant's conduct and connection

with the forum State [must be] such that he should reasonably anticipate being haled into court

there." *GTE New Media Servs.*, 199 F.3d at 1347 (quoting *World–Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 297 (1980)); *see also Satterlee v. Comm'r of Internal Revenue*, 195 F.

Supp. 3d 327, 340–41 (D.D.C. 2016), *motion for relief from judgment denied*, No. CV 15-1387

(ABJ), 2016 WL 7407330 (D.D.C. Sept. 2, 2016) (holding that the Court lacked personal

jurisdiction because requiring the defendant to litigate in the District of Columbia, based only on

conduct that, according to plaintiff, took place entirely outside of this jurisdiction, would "offend

traditional notions of fair play and substantial justice"); *see also Walden v. Fiore,* 571 U.S. 277,

134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (emphasizing that the only relevant contacts for specific

jurisdiction purposes are those of the defendant, and that it is "the *defendant's* suit-related

conduct [that] must create a substantial connection with the forum." *Id.* at 1121) (emphasis

added); *see also In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d 416, 425 (S.D.N.Y.

2018) (citing *Walden* and holding that "the 'necessary relationship' between the defendant and

the forum must arise out of contacts that the 'defendant *himself*' creates with the forum; 'the plaintiff cannot be the only link between the defendant and the forum.'").

Based on the allegations in the Complaint, none of the seven bases provided in the long-arm statute appear relevant.  Indeed, the only two prongs into which Plaintiff could even possibly attempt to shoehorn his allegations are § 13-423(a)(1) and § 13-423(a)(4).  Neither of these provisions apply, though.  Both of these provisions apply only if the Bank were transacting business in the District.  In determining whether an entity was transacting business in the District, the Court must assess "whether the defendant 'has purposefully availed itself of the benefits and protections of the District in engaging a business actually in the forum jurisdiction,' and protections of the District in engaging in a business actively in the forum jurisdiction," and whether "'it is fair and reasonable to expect it to anticipate being sued in that jurisdiction.'"  *Day v. Corner Bank (Overseas Ltd.)*, 789 F. Supp. 2d 150, 158 (D.D.C. 2011) (quoting *I Mark Mktg. Servs., LLC v. Geoplast S.P.A.*, 753 F. Supp. 2d 141, 154 (D.D.C. 2010) and *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000)).  Case law from this jurisdiction makes clear that Plaintiff's allegations—the Bank having business dealings with two entities, one of whom is affiliated with the World Bank and the other of whom is an arm of the U.S. Government, based in the District and membership in a District-based think tank (Complaint, ¶¶ 7-11)—fail to establish that the Bank conducts business in the District.

With respect to the Bank's membership in a think tank, a sister court in this jurisdiction has rejected an argument identical to the one advanced by Plaintiff.  The plaintiff in *American Association of Cruise Passengers v. Cunard Line, Ltd.*, 691 F.Supp. 379 (D.D.C. 1987) argued that the defendant's membership in a trade association based in the District of Columbia established that the defendant was transacting business in the District of Columbia for purposes

15

of § 13-423(a)(1).   *Id.* at 380.   The court roundly rejected this argument, holding that "[m]embership in a trade association . . . is not the equivalent of 'transacting business' within the meaning of the long-arm statute."   *See also Inv. Co. Inst. v. United States*, 550 F. Supp. 1213, 1217 n.6 (D.D.C. 1982) (noting that "it would surely come as a surprise to the members of the many trade associations having offices [in the District of Columbia] that their memberships counted as intrastate business for jurisdictional purposes.").   For purposes of analyzing the District's long-arm statute, there is no meaningful distinction between a think tank and a trade association.   Accordingly, under precedent from within this Circuit, it is quite clear that the Bank of Palestine's membership in a District-based trade association fails to establish that the Bank was transacting business within the District.

With respect to the Bank's dealings with IFC and OPIC, the Complaint fails to allege facts from which it could reasonably be inferred that the Bank actively engaged in business in the District and intentionally availed itself of the benefits and the protections of conducting business in the District.   To the contrary, the Complaint alleges the Bank's dealings with the IFC and OPIC were limited to projects in Palestine, not the District of Columbia.   Simply put, as alleged, it would not be "fair and reasonable" for the Bank to anticipate being sued in the District because of its dealings with the IFC and OPIC in Palestine.   And it would certainly be contrary to public policy to have the cost of doing business with IFC and OPIC—agencies dedicated to facilitating investments in businesses in emerging markets outside of the United States—be that recipients of these investments must subject themselves to being sued in the District of Columbia for any and all matters, including matters wholly unrelated to the investment that IFC or OPIC facilitated.

These deficiencies are not mere pleading errors that can be remedied by alleging additional facts.   Plaintiff's fundamental problem under the District of Columbia's long-arm

statute is that no nexus exists between the alleged jurisdictional facts and the claims he asserts: namely, that the Bank's interactions with the IFC, OPIC, and the trade association have absolutely no connection to Plaintiff's defamation and fraud claims.  Indeed, the Complaint does not, and could not, allege that *any* of the Bank of Palestine's supposed contacts with the District of Columbia relate to the claims he has filed.  This deficiency alone is fatal to any claim of specific jurisdiction.  *See Bancoult v. McNamara*, 214 F.R.D. 5 (D.D.C. 2003) (holding that even if the defendant's and its agents' interactions with the World Bank satisfied the "transacting business" standard, the plaintiff failed to establish that the D.C. long-arm statute applied because the plaintiffs' claims did not arise from these alleged interactions); *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 73 (D.D.C. 2007) (citing *Helicopteros Nacionales,* 466 U.S. at 414, and holding that the alleged business contacts between Defendant and the United States could not support specific jurisdiction because plaintiff's claims did not arise out of, or relate to, those contacts).  This fundamental flaw simply cannot be remedied.

*      *      *      *

The allegations in the Complaint fail to establish the existence of either general or specific jurisdiction.  Accordingly, this Court should dismiss the Complaint with prejudice for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(2).  If the Court determines that there is no personal jurisdiction, it need not reach the other bases for dismissal set forth in more detail below.

## II.   PLAINTIFF'S COMPLAINT MUST ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO RULE 12(B)(6).

### A.   Legal Standard

A Rule 12(b)(6) motion to dismiss tests whether the complaint "state[s] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under

Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).   A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). While the court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937; *See also Sanders v. Kerry*, 180 F. Supp. 3d 35, 41 (D.D.C. 2016).

With respect to allegations of fraud, although a court must take the facts in a complaint as true for the purposes of a motion to dismiss, it need not take conclusory allegations totally divorced from the factual basis for those allegations as true, especially in the context of the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b).   *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 17 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir.2015) (citing *McQueen v. Woodstream Corp.,* 248 F.R.D. 73, 77–78 (D.D.C. 2008) (holding that, under Rule 9(b), "the pleader nevertheless must satisfy his burden by stating with particularity the supporting factual allegations for his claim") and *Bender v. Rocky Mountain Drilling Assocs.,* 648 F. Supp. 330, 336 (D.D.C. 1986) (finding fraud claims based "on information and belief" generally disfavored and inadequate under Rule 9(b))).   *See also Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 95 (D.D.C. 2010) (dismissing claim for failure to plead with requisite particularity).   In this Circuit, a plaintiff alleging fraud must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Slinski v. Bank of Am., N.A.*, 981 F. Supp. 2d 19, 32

(D.D.C. 2013); *United States ex rel. Williams v. Martin–Baker Aircraft Co., Ltd.,* 389 F.3d 1251, 1256 (D.C. Cir.2004) (quoting *Kowal v. MCI Commc'ns, Corp.,* 16 F.3d 1271, 1278 (D.C. Cir.1994), in turn quoting *United States ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1385 (D.C. Cir.1981)).

Finally, in order to survive a motion to dismiss for failure to state a claim of civil conspiracy under District of Columbia law, a complaint must allege ***with some factual support***: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." *Mattiaccio v. DHA Grp., Inc.*, 20 F. Supp. 3d 220, 230 (D.D.C. 2014) (citing *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000)) (emphasis added). The question of whether a conspiracy has been adequately pled often turns upon the existence of an agreement, which is the essential element of a conspiracy claim. *Id.* (citing *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997)).   In pleading that a defendant entered into an agreement, the plaintiff must set forth more than just conclusory allegations of the agreement to sustain a claim of conspiracy against a motion to dismiss. *Id.* (citations omitted).

      **B.**      **Analysis**

            1.      *The Complaint Fails to State a Claim For Defamation*

Under District of Columbia law, a plaintiff claiming defamation must show that: (1) the defendant made a false and defamatory statement concerning the plaintiff; (2) the defendant published the statement without privilege to a third party; (3) the defendant's fault in publishing the statement amounted to at least negligence; and (4) either the statement was actionable as a matter of law irrespective of special harm or its publication caused the plaintiff special harm. *Carpenter v. King*, 792 F. Supp. 2d 29, 33–34 (D.D.C. 2011), *aff'd,* 473 F. App'x 4 (D.C. Cir.

2012) (citing *Mastro v. Potomac Elec. Power Co.,* 447 F.3d 843, 858 (D.C.Cir.2006); *Beeton v. Dist. of Columbia,* 779 A.2d 918, 923 (D.C.2001)); *see also Bell-Boston v. Manpower Int'l Staffing Agency*, 61 F. Supp. 3d 74, 77 (D.D.C. 2014); *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007).

District of Columbia law further requires that the plaintiff's factual allegations of defamation "be specific enough to allow Defendants to 'form responsive pleadings.'" *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 169 (D.D.C. 2013) (quoting *Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009)). Plaintiff fails to meet this standard.

Plaintiff's claim for defamation fails as a matter of law because he fails to plead his defamation claim with sufficient particularity to allow the Bank to form responsive pleadings. The Complaint acknowledges that the Bank did not publish anything directly and did not want to publish anything directly. (Complaint, ¶ 62.) The gravamen of the Complaint is that the Bank allegedly conspired to cause false statements to be published: "Bank of Palestine and Palestinian intelligence **caused** false and defamatory statements to be published…" (Complaint, ¶ 63); "Bank of Palestine and Palestinian Intelligence authorities published a second article **through** Al Akhbar…" (Complaint, ¶ 67); and "Bank of Palestine **caused** these statement [sic] to be published publicly on the internet." (Complaint, ¶ 77) (emphasis added). In *Hourani v. Mirchtev*, 943 F. Supp. 2d 159 (D.D.C. 2013), former Chief Judge Hogan explained that these kinds of conclusory allegations fail to meet a plaintiff's pleading requirements for a defamation claim.

In that case, the plaintiffs alleged that the defendant used his influence to falsely brand the [plaintiffs] as international criminals and terrorists and that he acted through another individual to cause a third-party entity to post defamatory statements. *Hourani*, 943 F. Supp. 2d

at 169.  However, the plaintiff in *Hourani* alleged no facts describing the influence defendant had with the entities that published the content or the entities that supposedly caused the content to be published.  *Id*.  Accordingly, Chief Judge Hogan held that "without alleging if or how [defendant] had contact with or control over the media or government publishers in question, [plaintiff's] statement that [defendant] somehow 'caused' these sources to defame [plaintiffs] is precisely the kind of 'mere conclusion[]' that is not 'entitled to the assumption of truth.'"  *Id.* at 170 (quoting *Iqbal*, 556 U.S. at 664)).

Likewise, here, Plaintiff has failed to allege any facts describing any influence whatsoever that the Bank may have over Al Akhbar, or even what relationship Defendant's influence, if any, had to the publication of the purportedly defamatory articles.  Plaintiff also fails to describe *how* the Bank purportedly "caused" Al Akhbar to publish these articles, or in what manner the Bank did so.  Consistent with *Hourani*, without alleging if or how the Bank had contact with or control over Al Akhbar, Plaintiff's statement that the Bank somehow caused Al Akhbar to defame Plaintiff is precisely the type of conclusory allegation former Chief Judge Hogan, and the Supreme Court of the United States in *Twombly*, has held is not entitled to the assumption of truth.  As such, Plaintiff's claim for defamation fails as a matter of law and must be dismissed.  *Hourani*, 943 F. Supp. 2d at 169, 172.

        2.     *The Complaint Fails to Adequately Allege that the Supposed Defamatory Statements Were Made with Actual Malice*

Plaintiff is a limited-purpose public figure who can prevail on his defamation claim only if he "proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  *See New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80 (1964).

The D.C. Circuit employs a three-part inquiry to determine whether someone is a limited-purpose public figure.  First, the court must identify the relevant controversy and determine whether it is a public controversy. […] Second, the plaintiff must have played a significant role in that controversy. […]. Third, the defamatory statement must be germane to the plaintiff's participation in the controversy.  *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 584–85 (D.C. Cir. 2016) (citations omitted).  In his Complaint, Plaintiff concedes facts that establish that he is a limited-purpose public figure with respect to the discourse surrounding the government of Palestine. (Complaint, ¶¶ 5, 21, 22.)  There is a public controversy regarding criticism of the government of Palestine; Plaintiff acknowledges that he has played a significant role in the controversial discourse surrounding the government of Palestine; and Plaintiff alleges that "the unlawful actions of Defendant Bank of Palestine [were undertaken]…due to his political affiliations and public statements made against the current Palestinian regime," (Complaint, p. 1), rendering them germane to his participation in the public controversy.  Accordingly, he must allege that Bank of Palestine acted with actual malice.  He has not done so.

The Complaint makes only conclusory allegations regarding actual malice, which are insufficient.  The Complaint states that "Bank of Palestine made the statements with actual malice, *i.e.*, the Bank of Palestine knew the statements were false based on its longstanding relationship with Mr. Elsalameen."  (Complaint, ¶¶ 76, 77.)  Courts regularly dismiss such claims for failure to allege actual malice beyond conclusory allegations.

In *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128 (D.D.C. 2016), for instance, this court dismissed the plaintiff's defamation claim for failure to allege any facts supporting the claim or actual malice, or that the defendant made statements knowing they were false or with reckless disregard for their truth.  The complaint at issue in that case alleged:

73. Even though Plaintiff is not a public figure, actual malice by Defendants is established by their intentional, reckless, unfounded publication on the internet of videos, photographs and statements on various websites and Twitter, with is intended to make Plaintiff appear odious, infamous, or ridiculous.

...

76. The questions and innuendos contained in Defendants' Campaign were published by Defendants with reckless disregard as to their truth.

...

79. Defendants either knew or recklessly disregarded the fact that Plaintiff has not engaged in any criminal conduct.

80. The questions, innuendos and statements in Defendants' Campaign were published by Defendants with reckless disregard of their truth or falsity or with malice.

The court found that "the bald allegations of the Complaint are insufficient to allege malice," and accordingly held that the defamation claim must be dismissed. *Id.* at 144.[9]

Here, Plaintiff's allegations do not even rise to the level of specificity, or provide as much factual support, as those in *Hourani v. Psybersolutions LLC*. Rather, Plaintiff alleges, without any factual support whatsoever, that "Bank of Palestine made the statements with actual malice, *i.e.*, the Bank of Palestine knew the statements were false based on its longstanding relationship with Mr. Elsalameen." (Complaint, ¶ 77.)  Plaintiff does not provide any facts to support that the Bank knew any of the alleged statements were false or that the Bank made the statements with reckless disregard for their truth.  Plaintiff's failure to adequately plead actual malice is yet another deficiency that independently warrants dismissal of his defamation claim. [10]

---

[9] Notably, the court also dismissed plaintiff's conspiracy to defame claim because "without an underlying claim of defamation, Count I alleging conspiracy to defame, must also be dismissed." *Id.* at 144.

[10] Other courts have regularly dismissed for failure to adequately plead actual malice as well. *See e.g. Egiazaryan v. Zalmayev*, No. 11 CIV. 2670 PKC, 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011) ("Although malice is a "condition of mind" that may be "alleged generally," under

Counts II, IV, V, VI, and VIII are all predicated on this inadequately pled defamation claim:  Count II, Conspiracy to Defame, merely reformulates the defamation scheme as a conspiracy; Count IV, Invasion of Privacy – False Light, repackages the defective defamation allegations as a false-light claim; Counts V and VI, Tortious Interference with Contract and Tortious Interference with Business Relations, allege that the Bank tortiously interfered by defaming the Bank; and Count VIII, Civil Conspiracy, alleges that the Bank conspired to defame Plaintiff.   Because all of these counts are predicated on the same inadequate defamation claim, they all fail to state a claim upon which relief can be granted.

3.  *Counts II and VIII Are Also Defective Because Plaintiff Has Failed to Adequately Allege the Existence of a Conspiracy*

In order to survive a motion to dismiss for failure to state a claim of civil conspiracy, including conspiracy to defame, under District of Columbia law, a complaint must allege with factual support: "'(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme.'"

Courts have regularly dismissed claims for conspiracy where, as here, the plaintiff fails to plead sufficient facts to support the existence of an agreement.  In *Mattiaccio v. DHA Grp., Inc.*, for instance, the plaintiff alleged conspiracy and conspiracy to defame, claiming that the defendants entered into an agreement to commit an illegal act of defamation against him.  20 F.

Rule 9(b), Fed. R. Civ. P., the pleading requirements of *Iqbal* apply with equal force.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1954 (2009)); and *Hakky v. Wash. Post Co.*, No. 9 Civ. 2406, 2010 WL 2573902, *6 (M.D. Fla. June 24, 2010) (granting motion to dismiss for "fail[ure] to allege sufficient facts demonstrating negligence or actual malice"); *Diario El Pais, S.L. v. Nielsen Co. (US), Inc.*, No. 07 Civ. 11295, 2008 WL 4833012, *6–7 (S.D.N.Y. Nov. 6, 2008) (granting motion to dismiss action for trade libel for failure to allege malice beyond conclusory and unsupported assertions).

Supp. 3d 220, 230 (D.D.C. 2014).   He also alleged that the defendants authorized, instigated, condoned, and participated in the conspiracy to commit defamation.   *Id.*   The court, however, agreed with the defendant that the plaintiff failed to sufficiently plead the existence of an agreement between two or more persons and failed to sufficiently allege that the underlying unlawful act—defamation—was committed.   The court held that the plaintiff's allegations were "purely conclusory and devoid of any factual support."   *Mattiaccio v. DHA Grp., Inc.*, 20 F. Supp. 3d 220, 230 (D.D.C. 2014) (quoting *Acosta Orellana v. CropLife Int'l.*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010)).   Specifically, the court noted that plaintiff alleged that defendant entered into an agreement, but provided no indication of when or how such agreement was brokered. *Mattiaccio*, 20 F. Supp. 3d at 230 (citing *Bush v. Butler*, 521 F. Supp. 2d 63, 68-69 (D.D.C. 2007) (dismissing conspiracy claim where plaintiff's allegation of an agreement provided no description of the nature of the agreement, or what particular acts were taken to form the conspiracy) and *McCreary v. Health*, No. Civ.A. 04-0623 PLF., 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005) (dismissing conspiracy claim when plaintiff's complaint failed to allege the existence of any events, conversations, or documents that indicated there was ever an agreement or meeting of the minds between any of the defendants)).   Accordingly, the court dismissed the claim for civil conspiracy to defame.   *Id.* at 231.

Like the plaintiff in *Mattiaccio*, Plaintiff's allegations in this case regarding any agreement between Bank of Palestine and Palestinian Intelligence consist of one paragraph and are merely conclusory statements that do not meet the pleading standards required under District of Columbia law.   For instance, Plaintiff alleges only that "Bank of Palestine and members of the Palestinian Intelligence entered into an agreement in early 2015, the purpose of which was to injure Mr. Elsalameen through the publication of defamatory statements.   Bank of Palestine and

its co-conspirators' agreement was facilitated through the close relationships of senior Bank of Palestine officials and senior members of Palestinian Intelligence and the Palestinian National Authority."  (Complaint, ¶ 83.)  However, Plaintiff has not pleaded any other facts to support these allegations.  Plaintiff provides no indication of how such an agreement was brokered.  He provides no description of the nature of the agreement, or what particular acts, if any, were taken to form the conspiracy, solidify the agreement, or establish a meeting of the minds.  He has not even pled the identity of the senior members of "Palestinian Intelligence" who purportedly participated in this alleged conspiracy or even the name of the Intelligence agency purportedly involved.  He has not alleged the existence of any events, conversations, or documents indicating that there was ever an agreement or meeting of the minds between the Bank and "Palestinian Intelligence," or any other third party.  Courts have found these deficiencies sufficient to defeat claims for civil conspiracy.  *See e.g.*, *Acosta Orellana v. CropLife Int'l.,* 711 F.Supp.2d 81, 113 (D.D.C. 2010); *Bush v. Butler,* 521 F.Supp.2d 63, 68-69 (D.D.C. 2007); *McCreary v.* Health, No. Civ.A. 04-0623 PLF.2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005).  This deficiency is yet another flaw that requires dismissal of Counts II and VIII.

>    4.    *Count III Should Be Dismissed For Failure To State A Claim For Invasion of Privacy – Publicity Concerning Private Life of Another*

To state an invasion of privacy claim based on the disclosure of private facts in the District of Columbia, a plaintiff must establish the following: (1) defendant gave publicity, (2) absent any waiver or privilege, (3) to private facts (4) in which the public has no legitimate concern, and (5) which would be highly offensive to a reasonable person of ordinary sensibilities.  *Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 11 (D.D.C. 2013) (noting that the failure to establish any one of these elements will defeat a plaintiff's cause of action).  Additionally, in this jurisdiction, invasion of privacy is an intentional tort.  *Randolph v. ING Life*

*Ins. & Annuity Co.*, 973 A.2d 702, 711 (D.C. 2009) (citing *Heard v. Johnson,* 810 A.2d 871, 881 n. 5 (D.C. 2002) and *Bailer v. Erie Ins. Exch.,* 344 Md. 515, 687 A.2d 1375, 1381 (1997), and upholding the trial court's dismissal of the invasion of privacy claim for failure to allege the requisite intent).

Count III of Plaintiff's Complaint, which alleges invasion of privacy—publicity concerning the private life of another, should be dismissed for failure to state a claim because Plaintiff fails to allege the requisite intent for invasion of privacy—an intentional tort—in this jurisdiction. Plaintiff alleges that Bank of Palestine made public many matters concerning the private life of Plaintiff, which included publishing through Al Akhbar unredacted copies of his Israeli identity card, Israeli passport, United States passport, and details of his contemplated acquisition of the Jerusalem property. (Complaint, ¶ 88.) However, Plaintiff fails to allege that Bank of Palestine acted with the requisite intent required to support a claim for invasion of privacy in this jurisdiction. The Complaint fails to allege facts supporting the conclusion that Bank of Palestine provided the information to Al Akhbar, let alone intended for this information to be made public. Intentional conduct is a necessary element of this cause of action. *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 711 (D.C. 2009); *Bailer v. Erie Ins. Exch.*, 344 Md. 515, 527, 687 A.2d 1375, 1381 (1997). Because Plaintiff has failed to allege the requisite intent, Count III must be dismissed.

5.    *Count VII Should Be Dismissed For Failure To State A Claim For Fraud*

The essential elements of fraud are "(1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with intent to deceive (5) with action taken in reliance upon the representation." *United States v. Kiefer*, 228 F.2d 448, 449 (D.C. Cir. 1955). In reviewing claims of fraud at the motion-to-dismiss stage, the Court need not take conclusory allegations totally divorced from any factual basis as true, especially in the context of

the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b).  The plaintiff must, instead, satisfy his burden by stating with particularity the supporting factual allegations for his claim.  Plaintiff has failed to meet that burden.

In Count VII of the Complaint, Plaintiff alleges that on March 18, 2016, Bank of Palestine, through a bank employee, falsely represented to Plaintiff that his account was frozen because the Bank of Palestine required additional documentation pertaining to his identity and his aunt's estate in order to establish who had authority over the account.  (Complaint, ¶ 107.) Plaintiff alleges that this misrepresentation was material (Complaint, ¶ 108), the Bank of Palestine knew that the representation was false, because it never intended to release the funds in the account, regardless of the documentation Mr. Elsalameen provided (Complaint, ¶ 109), and the Bank intended to deceive Plaintiff for the purpose of gathering highly sensitive personally identifiable information (Complaint, ¶ 110).  However, these allegations fall far short of adequately stating a claim for fraud under the heightened pleading requirements of Rule 9(b), as Plaintiff has not alleged any facts to support the conclusion that the Bank representative knew that the statements were false or that he had any intent to deceive Plaintiff.

In a recent case from this District, a sister court, dismissed the plaintiff's fraud claim for this very type of pleading deficiency.  *See Jones v. D.C.*, 241 F. Supp. 3d 81 (D.D.C. 2017). The court held that the plaintiffs, like Plaintiff here, had not alleged beyond conclusory statements that the defendant had knowledge of falsity or the intent to deceive.  The plaintiffs did not state with particularity the time and place of the alleged misrepresentations as required under Rule 9(b), and further, the plaintiffs did not allege that defendant's employee had knowledge of falsity or had the intent to deceive, as required to state a claim.  Accordingly, the court dismissed the fraud claims.  *Id.* at *4.  Likewise here, Plaintiff has not alleged any facts that the Bank

representative knew the statements were false or had any intent to deceive Plaintiff, as required to state a claim for fraud.   Therefore, Plaintiff's fraud claim must be dismissed. *See also Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 50 (D.D.C. 2010) (holding that "[d]ue to plaintiff's failure to allege the knowledge and intent elements, a claim for relief has not been stated with respect to fraud.").

## **CONCLUSION**

Accordingly, for the reasons stated above, the Complaint should be dismissed for two independent reasons.  First, the Complaint must be dismissed for lack of personal jurisdiction, as the exercise of both general and specific personal jurisdiction in this case would be improper. Second, the Complaint must be dismissed for failure to state any claim upon which relief can be granted.

For these reasons, Defendant Bank of Palestine respectfully requests that the Court dismiss the Complaint against it with prejudice.

Dated:  June 15, 2018                                 Respectfully Submitted.

**BANK OF PALESTINE, P.L.C.**

By:     */s/ Mary E. Gately*
        Mary E. Gately, Esq. (#419151)
        DLA Piper LLP (US)
        500 8th Street, NW
        Washington, DC, 20004
        (T) 202-799-4507
        (F) 202-799-5507 (fax)
        mary.gately@dlapiper.com

        Matthew Graves, Esq. (#481052)
        DLA Piper LLP (US)
        500 8th Street, NW
        Washington, DC, 20004
        (T) 202-799-4469
        (F) 202-799-5152 (fax)
        matthew.graves@dlapiper.com

Julie A. Gryce, Esq. (#988319)
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101-4297
(T) 619-699-2743
(F) 619-764-6743
julie.gryce@dlapiper.com

*Counsel for Defendant Bank of
Palestine, P.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2018, a true and correct copy of the

foregoing Defendant Bank of Palestine P.L.C.'s Memorandum of Law in Support its Motion to

Dismiss was served through the Court's electronic filing system and sent via electronic mail to:

> Scott D. Gilbert
> Gilbert LLP
> 1100 New York Avenue, NW
> Suite 700
> Washington D.C.20005
>
> *Counsel for Plaintiff Fadi Elsalameen*

> */s/ Mary E. Gately*
> Mary Elizabeth Gately, Esq.