


SEP - 4 2019

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FADI ELSALAMEEN,<br>Plaintiff,<br>v.<br>BANK OF PALESTINE, P.L.C.,<br>Defendant. | ***FILED UNDER SEAL***<br><br>Civil Action No. 16-1976 (ABJ) |

## MEMORANDUM OPINION

Plaintiff, Fadi Elsalameen, filed an eight-count amended complaint against the Bank of Palestine, P.L.C. ("Bank of Palestine" or "Bank") alleging: 1) defamation *per se*, 2) conspiracy to defame, 3) invasion of privacy – publicity concerning private life of another, 4) invasion of privacy – false light, 5) tortious interference with contract, 6) fraud, 7) civil conspiracy, and 8) intentional infliction of emotional distress. Second Am. Compl. [Dkt # 36] ("Am. Compl.") ¶¶ 111–59. Plaintiff seeks a declaratory judgment, compensatory damages of at least $5,980,000.00, punitive damages, and attorneys' fees and costs. *Id.*, "Prayer for Relief," at 39–40. The Bank moved to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. Plaintiff opposed the motion and cross-moved for limited jurisdictional discovery. The Court granted plaintiff's discovery request and held the motion to dismiss in abeyance while the parties conducted discovery. After reviewing the complete record, including the parties' post-discovery supplemental filings, the Court finds that it lacks personal jurisdiction over defendant, and it will dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(2).

## BACKGROUND

In his second amended complaint, plaintiff alleges that the Bank of Palestine engaged in a "prolonged, calculated effort to discredit, threaten, extort, and silence" him due to his criticism of the "Palestinian regime" and "powerful Palestinian institutions and individuals." Second Am. Compl. at 1.[1] Plaintiff brought this suit under the Court's diversity jurisdiction, 28 U.S.C. § 1332. *Id.* ¶ 1. He alleges that he is a U.S. citizen currently residing in the state of North Carolina, but that he suffered most of the alleged harm while he was living in the District of Columbia. *Id.* The Bank of Palestine is a citizen of Palestine, and it is not domiciled in the District of Columbia nor North Carolina. *Id.*

On July 12, 2018, the Bank of Palestine moved to dismiss the suit for lack of personal jurisdiction and failure to state a claim. Def. Bank of Palestine, P.L.C.'s Mot. to Dismiss [Dkt. # 29] ("Def.'s Mot."), Def. Mem. of Law in Supp. of its Mot. [Dkt. # 29-1] ("Def.'s Mem."). Plaintiff opposed the motion, arguing among other things, that personal jurisdiction is proper under the D.C. long-arm statute, D.C. Code § 13-423(a)(4), based upon the Bank's activities which "are persistent and reasonably connect[ed] . . . to the District of Columbia." Pl.'s Opp. to Def.'s Mot. to Dismiss & Mem. in Supp. of Cross-Mot. [Dkt. # 31] ("Pl.'s Opp.") at 4–7. Plaintiff asserted that, among other activities, the defendant solicited capital investments in the District and engaged in online banking transactions with D.C. residents. *Id.* at 5–7. In the alternative, plaintiff cross-moved to conduct limited jurisdictional discovery on the extent of the Bank's contacts with the District of Columbia. Pl.'s Cross-Mot., In the Alternative, For Limited Jurisdictional Discovery [Dkt. # 32] ("Pl.'s Cross-Mot.") at 2–4.

---

1 The Second Amended Complaint was filed after the defendant's motion to dismiss was fully briefed. However, the parties agreed that defendant's motion to dismiss would be deemed to apply to the new complaint. Min. Order (Oct. 2, 2018).

On November 27, 2018, the Court granted plaintiff's cross-motion to hold defendant's motion to dismiss in abeyance to allow for jurisdictional discovery. Min. Order (Nov. 27, 2018). The Court limited the scope of discovery to address four relevant questions:

> In particular, discovery may address: 1) whether defendant solicited capital investments from private individuals or entities – as opposed to any governmental entities or arms of the World Bank, which would not be relevant – within the District of Columbia; 2) whether it solicited new banking customers within the District of Columbia; 3) whether it operates any branches or offices or employs any individuals in the District of Columbia; and 4) the use of its online website by customers within the District of Columbia to transact banking business, including, the nature, frequency, and volume of any such use.

*Id.* After conducting discovery, the parties submitted supplemental briefs and exhibits in support of their positions. Pl.'s Suppl. Opp. to Def.'s Mot. to Dismiss [Dkt. # 41] ("Pl.'s Suppl.") (sealed); Def.'s Suppl. Reply in Supp. of Mot. to Dismiss [Dkt. # 42] (Def.'s Suppl.").

**STANDARD OF REVIEW**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), a plaintiff "must make a *prima facie* showing of the pertinent jurisdictional facts." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017), quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). This requires specific factual allegations connecting the defendant to the forum. *First Chicago Int'l*, 836 F.3d at 1378, citing *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n.5 (9th Cir. 1980). Conclusory statements and bare allegations are insufficient. *Livnat*, 851 F.3d at 57, citing *First Chicago Int'l*, 836 F.3d at 1378–79. In conducting the personal jurisdiction analysis, any factual discrepancies must be resolved in favor of the plaintiff, *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990). But the Court need not treat all of the plaintiff's jurisdictional allegations as true. *Myers v. Holiday Inns, Inc.*, 915 F. Supp. 2d 136, 139 (D.D.C. 2013). "Instead, the court may receive and weigh affidavits and

any other relevant matter to assist it in determining the jurisdictional facts." *Id.*, citing *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).

## ANALYSIS

"To establish personal jurisdiction over a non-resident . . . [the Court] must first decide whether statutory jurisdiction exists under the District's long-arm statute and, if it does, then [the Court] must determine whether an exercise of jurisdiction would comport with constitutional limitations" of the Due Process Clause. *Forras v. Rauf*, 812 F.3d 1102, 1105–06 (D.C. Cir. 2016). In his opposition to the motion to dismiss, plaintiff contends that personal jurisdiction is proper under Section (a)(4) of the District's long arm statute. Pl.'s Opp. at 4, citing D.C. Code § 13-423(a)(4).

Section (a)(4) allows a court to exercise personal jurisdiction over a non-resident who:

> caus[es] tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia

D.C. Code § 13-423 (a)(4). These requirements, in addition to the in-forum injury, "serve to filter out cases in which the in[-]forum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987).

Plaintiff submits that "the facts collected through . . . discovery have demonstrated that Bank of Palestine's contacts with Washington, D.C. are frequent, persistent, and substantial." Pl.'s Suppl. at 1 (sealed). Viewing the facts in the light most favorable to plaintiff, the Court finds that the evidence does not support that conclusion.

## I. The Customers

It is undisputed that the Bank has no offices, branches, facilities, ATMs, or real estate in the District Columbia. Def.'s Suppl. at 3. Nor does the Bank have employees, directors, officers, agents for service of process, or subsidiaries within this forum.[2] *Id.* The Bank only has four customers in D.C. out of its nearly 1 million customers worldwide. *Id.* at 1; Pl.'s Suppl. at 3 (sealed).

Plaintiff asks the Court to find that defendant regularly does and solicits business in the District of Columbia based upon the banking activities of those four customers. Plaintiff points out that since 2015, those customers engaged in transactions that involved "$40 million in aggregate value." Pl.'s Suppl. at 9 (sealed). In support of his position, plaintiff cites *Founding Church of Scientology v. Verlag*, 536 F.2d 429 (D.C. Cir. 1976). But that case is inapposite because there the D.C. Circuit focused on revenues rather than the amount of money involved in the transactions, and it considered whether that amount was "substantial" based upon the defendant's total revenues. *Id.* at 432–33.

Here, the four D.C. clients generated merely $6,685.00 in revenues from banking fees collected over a four-year period between January 1, 2015 to February 1, 2019. Def.'s Suppl. at 12; Pl.'s Suppl. at 3; Ex. A to Pl.'s Suppl. [Dkt. # 40-4] ("Def.'s Resp. to Pl.'s Interrog.") at 15 (sealed). To put that in context, over the period from 2015 through 2017, the Bank reported a gross income of $535,206,456 and net interest and commission revenue (i.e., fees) of $447,572,908. Def.'s Ex. 2, 2017 Annual Report [Dkt. # 42-1] at 8. Therefore, the banking fees

---

2 Plaintiff states that, "[o]n information and belief, Bank of Palestine knowingly engages individuals located within Washington, D.C. to facilitate business transactions with customers within Washington, D.C." Pl.'s Suppl. at 8 (sealed). But plaintiff cites to no evidence in the record and instead relies solely on a paragraph in his complaint which describes a single meeting between himself and a "Palestinian diplomat" regarding his account with the bank. *Id.*, citing Compl. ¶ 21.

collected from the D.C. clients represent approximately 0.001494 percent of the Bank's total fee-related revenues. Such an infinitesimal percentage and relatively small amount of gross revenues is insufficient to support an inference that defendant regularly does and solicits business in the District of Columbia or derives substantial revenue from banking activities in the District. *See, e.g.*, *Verlag*, 536 at 433 (holding that $26,000 of magazine sales to D.C. residents, which represented one percent of the defendant's total gross revenues, constituted "substantial revenue" and demonstrated a "reasonable connection" to the forum); *Burman v. Phoenix Worldwide Indus., Inc.*, 437 F. Supp. 2d 142, 155 (D.D.C. 2006) (holding that $30,000 in revenue derived from contacts in the District of Columbia, amounting to 0.15 percent of a total annual revenue of twenty to thirty million dollars, was insufficient to "indicate a commercial impact in the forum, such that a defendant fairly could have expected to be hauled into court").

## II. The Website

Next, plaintiff argues that the Bank solicited new business from D.C. residents by maintaining an English language website that features a section titled "Diaspora" which promotes its services to the Palestinian diaspora. Pl.'s Suppl. at 4, 11 (sealed).[3] The mere accessibility of a website in the District of Columbia is an insufficient basis for personal jurisdiction. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000). Even plaintiff acknowledges that the Bank's website is directed at a "worldwide" audience, which incidentally includes "potential customers in Washington, D.C." Pl.'s Suppl. at 4. The Court found no mention of the District of Columbia on the Bank's website, nor did plaintiff put forth any evidence that the website is used to target new customers within D.C. Plaintiff's argument merely makes the unremarkable observation that the website is accessible to D.C. residents. *See Bible Way Church*

---

3 Plaintiff cites the following website: https://www.bankofpalestine.com/en

*of Our Lord Jesus Christ World Wide, Inc. v. Showell*, 578 F. Supp. 2d 164, 171 (D.D.C. 2008), quoting *Kline v. Williams*, 2006 WL 758459, at *4 (D.D.C. March 23, 2006) ("[T]he mere maintenance of a website accessible to Internet users in the District does not amount to 'any persistent course of conduct' within the meaning of the long-arm statute.").

Plaintiff cites *Blumenthal v. Drudge*, 992 F. Supp. 44, 57 (D.D.C. 1998), which held that a defendant's website "created an affiliation with the forum that made it reasonable for the publisher to anticipate being haled into court in the forum." Pl.'s Suppl. at 12 (sealed). That case is plainly distinguishable because in exercising personal jurisdiction, the *Drudge* court weighed heavily the fact that the defendant wrote about "'inside the Beltway' gossip and rumor" and even solicited content from District of Columbia residents and officials. 992 F. Supp at 57. Such facts showing that District residents were specifically targeted are absent here.

Plaintiff also argues that defendant engaged in a "persistent course of conduct" through its website because its "Washington, D.C., customers regularly used the website to access their accounts and were able to use the website to effect the transfer of funds." Pl.'s Suppl. at 11 (sealed). He notes that between January 1, 2015 through January 11, 2019, "Washington, D.C. customers used Bank of Palestine's website to login to online accounts a total of 1,739 times," *id.* at 5, 11, and at least once a customer used the website to transfer funds. Def.'s Resp. to Pl.'s Interrog. at 15 (sealed). Plaintiff then cites *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002), in which the D.C. Circuit held that a website *could* form the basis for personal jurisdiction, particularly when the defendant's interactive website allowed users to conduct financial transactions. Pl.'s Suppl. at 11 (sealed). But in that case, the Court of Appeals found that the trial court erred when it denied the plaintiff's request to conduct jurisdictional discovery which was necessary to determine whether the defendant was "actually 'doing business,'" and to

examine the "frequency and volume of the [defendant's] transactions with District residents." *Id.* It did not opine on what the ultimate decision would be. *See id.*

Here, the Court gave the plaintiff the opportunity to conduct discovery. And jurisdictional discovery revealed that the Bank's four D.C. customers accessed the website 1,739 times, and that only one transaction was effected through the website. Pl.'s Suppl. at 11 (sealed). The volume and frequency of these contacts are negligible considering that they represent the online activity of only four customers over a four-year period, and as noted earlier, those customers represent a tiny percentage of overall revenues for defendant.

Therefore, based on the Court's review of the record, it finds that there is no basis to infer that defendant engages in a persistent course of conduct or derives substantial revenue from the District.

## III. The Emails

Plaintiff argues that defendant targets investors and solicits business in the District of Columbia through its "IR List," a global e-mail list that includes D.C. residents. Pl.'s Suppl. at 6, 10 (sealed).[4] Plaintiff submits that "[b]etween January 1, 2015 and the present, Bank of Palestine sent fifty (50) e-mail communications to recipients in Washington, D.C via the IR List." *Id.* at 6. Plaintiff notes that the Bank "identified eighty-three (83) recipients on the IR List as having addresses in Washington, D.C., twenty-eight (28) of which it does not identify as being associated with any governmental agency or the World Bank." *Id.* Defendant contends that the emails sent

---

4 Neither party explained what "IR" stands for, so it is unclear whether it is a reference to "Investor Relations," "International Relations," or something else. Defendant explains in its supplemental brief that the global list was "primarily assembled using business cards that certain Bank employees collected, and the overwhelming majority of those trips to the District of Columbia involved meetings with government employees and employees of quasi-governmental agencies." Def.'s Suppl. at 13.

to D.C. residents lack "any direct solicitation," and instead "were intended to keep stakeholders and interested parties generally informed about the developments and news with the Bank." Def.'s Suppl. at 13.

After reviewing the emails themselves, the Court agrees. The emails, which are primarily addressed to "Shareholders and Friends," include links to fiscal reports and copies of the Bank's press releases. Ex. H to Pl.'s Suppl. [Dkt. # 40-13] (sealed). None of the emails ask readers to invest or open accounts with the Bank. *Id.* There are no references to the District of Columbia, nor are D.C. readers addressed specifically. *Id.* The emails seem designed to keep interested parties across the globe aware of recent developments at the Bank. The Court finds there is no basis to conclude that the fifty mass emails sent around the world over a period of four years solicited business from D.C. residents. Several courts in the district have held that merely "[s]ending emails or making phone calls to District residents does not constitute conducting 'regular business' or engaging in a 'persistent course of conduct' in the District of Columbia." *Nuevos Destinos, LLC v. Peck*, No. 15-cv-1846, 2019 WL 78780, at *11 (D.D.C. Jan. 2, 2019) (collecting cases); *Naegele v. Albers*, 110 F. Supp. 3d 126, 153 (D.D.C. 2015) (same).

In support of his argument that the emails should be viewed as an effort to target new D.C. customers, plaintiff cites *Aiken v. Lustine Chevrolet, Inc.*, a case in which a Maryland car dealership was subject to personal jurisdiction by a District of Columbia court since "it advertise[d] heavily in the District of Columbia and ma[de] sales to persons who [were] residents of that jurisdiction." 392 F. Supp. 883, 885–86 (D.D.C. 1975). The Bank's IR List is not analogous to the advertising and sales of a local car dealership which relies upon the business of the District of Columbia given its close geographic proximity. The international nature of the IR List and lack of any reference to the District of Columbia are strong distinguishing factors.

Importantly, a significant majority of the individuals in the District of Columbia who receive emails from the Bank are affiliated with government agencies. *See* Pl.'s Suppl. at 6 (sealed). As the Court noted in its Minute Order granting plaintiff's request to conduct jurisdictional discovery, whether defendant solicited capital investments from governmental entities or arms of the World Bank is irrelevant to the jurisdictional analysis. Min. Order (Nov. 27, 2018); *see also Carr*, 814 F.2d at 761–62 (holding that grant awards and other connections to federal agencies and federal government in Washington D.C. should not be considered in personal jurisdiction analysis); *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 81–82 (D.D.C. 2004) (finding that funding and other contacts with IFC are exempted as a "government contact" because the IFC is part of the World Bank and the United States is a member of the World Bank).

**IV. The Business Trips**

Plaintiff asserts that between January 1, 2015, and the present, the Bank had "significant physical contacts with private individuals and entities in Washington, D.C." Pl.'s Suppl. at 7 (sealed). Plaintiff references four business trips during that period. *Id.* at 5–6, 9.

Two of these trips – October 4-8, 2016, and October 11-14 2017 – are irrelevant to the jurisdictional analysis because they consist of meetings at the Institute of International Finance ("IIF"), a trade association. Def.'s Resp. to Pl.'s Interrog. at 6 (sealed). "[C]ourts in this jurisdiction have explicitly rejected the notion that a nonresident defendant can be subjected to jurisdiction based upon its membership in a local organization." *Burman*, 437 F. Supp. 2d at 155; *see also World Wide Minerals Ltd. v. Republic of Kazakhstahn*, 116 F. Supp. 2d 98, 106 (D.D.C. 2000) (disregarding contacts with trade associations in the District of Columbia from the personal jurisdictional analysis); *Am. Ass'n of Cruise Passengers v. Cunard Line Ltd.*, 691 F. Supp. 379,

381 (D.D.C. 1987) (holding that personal jurisdiction could not be exercised over a nonresident defendant based on "sporadic attendance at trade association meetings held in the District of Columbia"). A third trip, on October 18-20, 2016, was made to accept an award at the "Annual Summit of the Global Banking Alliance for Women," which was held in D.C. Def.'s Resp. to Pl.'s Interrog. at 6 (sealed).

The remaining trip consisted of the Washington, D.C., stop of the Bank's multi-city "USA Road Show" on December 12-13, 2016. Plaintiff asserts that Bank officials solicited several potential investors during this trip. Pl.'s Suppl. at 5 (sealed). The Bank insists that it "did not engage in any fundraising or obtain any investment during any of its trips to the District of Columbia," and that the D.C. Road Show stop included "meetings with government and quasi-government agencies" as well as a meeting with defendant's attorney. Def.'s Suppl. at 15–16.

That appears to be an overstatement. Plaintiff points out that the Road Show was organized by the Bank's Investor Relations Department, and that it described that effort in its 2016 Annual Report as "developing investor relations spanning different regions of the globe." Pl.'s Suppl. at 5, citing Ex. C to Pl.'s Suppl. [Dkt. # 40-6] at 26 (sealed). An itinerary of the D.C. trip reveals that Bank officials met with representatives from a manufacturing company and representatives from a non-profit corporation that manages investment funds, among other individuals. Pl.'s Suppl. at 5–6 (sealed); Ex. F to Pl.'s Suppl. [Dkt. # 40-11] at 3 (sealed).

But this single trip hardly constitutes a "persistent course of conduct." D.C. Code § 13-423(a)(4). And as the Court noted, the other three business trips during the four-year period are irrelevant. Thus, the infrequent and sporadic nature of the Bank officials' trips to the District of Columbia weighs against exercising personal jurisdiction over defendant.

## V. The Shareholders

Jurisdictional discovery revealed that the Bank has two shareholders who reside in Washington, D.C. Def.'s Resp. to Pl.'s Interrog. at 11. The highest equity ownership of these two shareholders from 2015 through 2018 was 0.000033330% and 0.00006950%, respectively. *Id.* This negligible amount does not show a "persistent course of conduct" or that the Bank is regularly doing business in D.C. Plaintiff notes that these two shareholders are also client investors in the Bank's subsidiary, Al-Wasata Securities. Pl.'s Suppl. at 7 (sealed). But a "subsidiary's forum contacts are not ordinarily attributed to the parent entity," unless it acts as an alter ego of which the court has personal jurisdiction, and plaintiff has not put forth any facts to support such an inference. *Leitner-Wise v. Clark*, No. 18-771, 2018 WL 6787999, at *4 (D.D.C. Dec. 26, 2018) (citations omitted).

## CONCLUSION

For the reasons stated above, the Court finds that defendant's few and sporadic contacts with the District of Columbia are insufficient to exercise personal jurisdiction under Section (a)(4) of the D.C. long arm statute. The D.C. Circuit has interpreted that specific provision to "stop short of the outer limit of the constitutional space" and therefore the exercise of personal jurisdiction would also be improper under the Due Process Clause. *GTE New Media Servs. Inc.*, 199 F.3d at 1347, quoting *Carr*, 814 F.2d at 762.

Accordingly, the Court will grant defendant's motion to dismiss, [Dkt. # 29], pursuant to Federal Rule of Civil Procedure 12(b)(2). A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 4, 2019